## OLIVER DECKER

### *v.*

## HOMER DECKER *et al.*

*Filed at Mt. Vernon June 20, 1887.*

1. WILLS—*construction, aided by parol evidence—in the case of a latent ambiguity.* While the general rule is, that the intention of the testator is to be gathered from an inspection and consideration of the will, and from no other source, yet, in case of latent ambiguity, courts do and must listen to extrinsic evidence,—not for the purpose of contradicting or adding to the terms of the will, but for the purpose of determining the existence or non-existence of latent ambiguity, and to enable the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time the will was made, whereby to determine the intention of the testator.

2. SAME—*parol evidence to aid the description of land devised.* A testator devised to his son "twenty acres off the west half of the north-east quarter of the north-east quarter of section 33, township 18 north, range 11 west," and the evidence showed that he never owned the north-east quarter of the north-east quarter of this section 33, or any part of it, but that he did own the north-west quarter of the north-east quarter of that section: *Held,* that there was a latent ambiguity in the devise, the descriptive words of the subject of the devise being in part false, and that if, after striking out so much of the description as was false, enough remained in the will, interpreted in the light of surrounding circumstances when the will was made, to identify the premises, the devise would be good.

3. By the admission of such extrinsic evidence, no words are inserted in the description which were left out by mistake, and nothing is added to the will, but only the false part of the description is rejected; and it being evident that the testator intended to devise land owned by him lying in the north-east quarter of section 33, township 18 north, range 11 west, and as he owned no land in that quarter except the north-west quarter of the quarter thereof, it is clear that he intended to devise the twenty acres off the part of the quarter he owned. This case is to be distinguished from *Kurtz* v. *Hibner*, 55 Ill. 514, where the court was asked to insert or substitute words of description in place of those used, and where, after rejecting that part of the description which was false, there were no words used from which the land could be identified.

4. SAME—*bequest of "money"—what will pass thereby.* The general rule is, that a simple bequest of money, in the absence of anything in the context to show that the word "money" is used out of its ordinary or popular signification, will not include personal estate in general, but will be confined to money strictly so called.

5.   Where the word "money" or "moneys" is used in a will in reference to the residuum of the personal estate after the payment of legacies, debts, etc., and where a contrary construction would leave a large part of the estate undisposed of by the will, these circumstances will incline the courts to hold that a bequest of money "remaining," was used to signify the residue of the personal estate.

6.   SAME—*and herein, whether debts amd funeral expenses are made a charge upon realty to the exclusion of the personalty.*   A testator, after providing for the payment of his just debts and funeral expenses, devised all of his lands to his son and a grand-daughter and a grand-son, and then directed, "If there is any money remaining after my death, it shall be equally divided between" the grand-son and grand-daughter.   The testator left in cash only $368, and some $7592, money loaned:   *Held,* that the grand-children, under the words, "any money remaining," took the entire personal estate remaining after the payment of debts and funeral expenses, including the moneys loaned.   The formula, "after the payment of funeral expenses and just debts, I give," etc., preceding the subsequent dispositions of the testator's real and personal property, indicated no purpose on his part to specially charge his realty with such debts and expenses, to the exclusion of the personal property, but left it for the law to determine which should be primarily liable.

7.   SAME—*after acquired property—whether it will pass.*   In the absence of anything showing a contrary intention, no reason is perceived why after acquired property will not pass under a residuary clause in a will, sufficiently general to embrace it, the same as if owned by the testator when he executed the same.

WRIT OF ERROR to the Circuit Court of Cass county.

Mr. R. W. MILLS, and Mr. JAMES MCCARTNEY, for the plaintiff in error:

Although a simple bequest of money will not, of itself, pass stock or personal property, yet the word may be so used as, from the whole context of the will, to show that the testator meant it to pass stock and other personal estate.   2 Williams on Executors, 1190; 1 Jarman on Wills, 769; *Mann* v. *Mann,* 1 Johns. 231; *Larner* v. *Larner,* 3 Drewry's Ch. 704; *Lowe* v. *Thomas,* 5 De G., M. & G. 315; *Morton* v. *Perry,* 1 Metc. 446.

Courts are inclined to construe a residuary bequest in such a way as to make it a vested one, rather than leave a partial intestacy.   1 Jarman on Wills, 851.

If the testator has declared his intention to dispose of all his property, the word "money" may be held to include promissory notes, as otherwise the property might not all be disposed of by the will. 2 Williams on Executors, 1190; *Paul* v. *Ball,* 31 Texas, 10; *In re Miller,* 48 Cal. 165; *Morton* v. *Perry,* 1 Metc. 446; *Beatty* v. *Lalor,* 15 N. J. Eq. 108; *Mann* v. *Mann,* 1 Johns. Ch. 231; 14 id. 1; *Faulkerson* v. ·*Chitty,* 4 Jones Eq. 244.

Where there is no money upon which the bequest can operate, the meaning will sometimes be extended to stock in the public funds. *Chapman* v. *Reynolds,* 6 Jar. (N. S.) 440; *Perkins* v. *Mathes,* 49 N. H. 107; *Smith* v. *Davis,* 1 Grant, (Pa.) 158; 1 Redfield on Wills, 438.

"Money" means gold and silver coin and bank notes only. *Hotham* v. *Sutton,* 15 Ves. 319; *Beck* v. *McGillis,* 9 Barb. 35; *Paup* v. *Sylvester,* 22 Iowa, 371; *Dabney* v. *Cotteral,* 9 Gratt. 572.

If the words of a will leave the intention doubtful, the will must be construed according to the legal import of the words used. *Annable* v. *Patch,* 3 Pick. 360; *Osgood* v. *Lovering,* 31 Me. 464; *Thelluson* v. *Woodford,* 4 Ves. 329; *Griffith* v. *Coleman,* 5 J. J. Marsh. 600.

A technical meaning will always be given to technical words, unless clear evidence of a contrary intention is furnished. *Francis' Estate,* 75 Pa. St. 220; *Mowatt* v. *Carow,* 7 Paige, 328; *Howe* v. *Van Shaik,* 3 N. Y. 538; *Lawrence* v. *Hebbord,* 1 Bradf. (N. Y.) 252.

Plain language used in a will can not be set aside upon a suspicion of a different intention. 2 Jarman on Wills, 373; 2 Williams on Executors, 1188; *Jenkins* v. *Van Schaak,* 3 Paige, 242; *Taylor* v. *Wendel,* 4 Bradf. 324; *Smith* v. *Burch,* 92 N. Y. 228.

Cases construing the meaning of the word "money" in a will: *Williams* v. *Williams,* 8 Ch. Dis. 789; *Manning* v. *Purcill,* 56 Eng. Ch. 55; *Byrom* v. *Brandreth,* L. R. 16 Eq. 475;

*In re Mason's Will,* 34 Beav. 490; *Low* v. *Thomas,* 54 Eng. Ch. 315; *Parker* v. *Merchant,* 19 id. 355; *Fryer* v. *Rankin,* 11 Sim. 55; *Wait* v. *Combes,* 5 De G. & S. 676.

If a sufficient description remain to identify the object of the devise, the false will be rejected, and the gift sustained. *Fitzpatrick* v. *Fitzpatrick,* 36 Iowa, 674.

For a general discussion of the doctrine of misnomer and misdescription, see 1 Jarman on Wills, 376.

The word "my," in this clause, is a part of the description of the land, and when it appears that the testator did not own the land specifically described, it is certainly competent to identify the property intended, by parol evidence, which is always admissible to explain a latent ambiguity. *Bowen* v. *Allen,* 113 Ill. 53.

Messrs. Morrison & Whitlock, for the defendants in error:

The will should be read as a whole, in the construction of any part thereof. 3 Jarman, 669; *Smith* v. *Taylor,* 21 Ill. 296; *Bergan* v. *Cahill,* 55 id. 160; *Markillie* v. *Ragland,* 79 id. 98; *Rountree* v. *Talbott,* 89 id. 246.

It will be presumed in the case of a will, that the testator intended to dispose of his entire estate. Redfield on Wills, 442; *Higgins* v. *Dwen,* 100 Ill. 554; *Smith* v. *Smith,* 17 Gratt. 268; *Irwin* v. *Zane,* 15 W. Va. 646.

In *Rogers* v. *Thomas,* 2 Kee, 8, where a testatrix, after giving various pecuniary and specific legacies, bequeathed to the inhabitants of T. row, all which might remain of her money after her lawful debts and legacies were paid, Lord Langdale, M. R., held the charge of debts and legacies sufficient evidence of the testatrix's intention to include the general residue in the bequest of "all which might remain of money." See, also, *Kendall* v. *Kendall,* 4 Russ. 360; *Phillips* v. *Eastwood,* 1 Ll. & Go. 291; *Barrett* v. *White,* 1 Jur. (N. S.) 652; *Grosvenor* v. *Durston,* 25 Beav. 99; *Stocks* v. *Bane,* Johns. 54; *Dawson* v. *Gaskoin,* 2 Kee, 14.

We insist, first, that the words, "money remaining after my death," mean personal property when converted into cash, as well as cash; second, that the will can not be corrected or explained by parol evidence as to the twenty-acre tract claimed by Oliver; third, that even if there were error in the decree, Oliver Decker was not affected by it, and can not question it on appeal; fourth, that the after acquired real estate passed to the residuary devisee, Homer, under the will; and fifth, that the legal presumption is, and the contents of the will show, that it was not the intention of the testator to leave any part of his estate intestate. /

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This writ of error brings before us for review a decree of the circuit court of Cass county, giving construction to the last will and testament of John Decker, late of Cass county, deceased. The testator, at the time of his death, left Oliver Decker, a son, and Rosina and Homer Decker, two minor grand-children, his only lineal descendants, and devisees under the will. Oliver was of full age, and is made executor of the will. The estate of the deceased, at the time of his death, consisted of a number of tracts of land, and something over $8000 in personal property, consisting chiefly of $368.70 cash, and $7592.75 loaned money. Besides this, there were various articles of household furniture, and other articles of but little value, the whole of which were perhaps worth but little, if anything, over $100. The condition of the estate at the time the will was made, was about the same that it was at the time of the testator's death, the only difference being, the amount of loans was somewhat increased by the accumulations of interest.

As questions are raised on the argument upon all the clauses of the will, it can be considered more conveniently by setting the instrument out *in extenso.* Omitting the formal parts at the beginning and conclusion, it is as follows:

"*First*—After the payment of funeral expenses and just debts, I give, devise and bequeath to my son, Oliver Decker, a part of my real estate, to-wit: The south-east quarter of the south-east quarter of section 19, and the west half of the north-east quarter of section 29; also, twenty acres off the west half of the north-east quarter of the north-east quarter of section 33,—all in township 18 north, range 11, west of the third principal meridian,

"*Second*—My grand-daughter, Rosina Decker, shall have the west half of the north-east quarter of section 28, thirty acres off the east half of the north-west quarter of section 28, thirty acres off the east half of the north-east quarter of section 29, thirty acres off the north-east quarter of the south-east quarter of section 28, all in same town and range,—the last mentioned lot to contain forty acres, more or less,—and west half, north-west quarter, of section 28, same town and range.

"*Third*—That the following property be equally divided between my son, Oliver Decker, and my grand-daughter, Rosina Decker: The north-east quarter of the north-east quarter of section 27, and sixteen acres off the north side of the north-west quarter of the north-east quarter of section 27, and twenty-two acres, part of the north-west quarter of the north-east quarter of section 27, township 18, range 10, which lies south of sixteen acres off the north side of said north-west quarter of the north-east quarter of said section 27, and the north end of the south-west quarter of the north-east quarter of section 27, containing twenty-six and one-half acres.

"*Fourth*—My grand-son, Homer Decker, shall have all my real estate remaining and belonging to me, after taking therefrom the real estate bequeathed to my son, Oliver Decker, and grand-daughter, Rosina Decker.

"*Fifth*—If there is any money remaining after my death, it shall be equally divided between Rosina Decker and Homer Decker."

As the most important question, and the one about which we have had the greatest difficulty in arriving at a satisfactory conclusion, arises on the construction of the fifth clause, that clause will be considered first.

The difficulty consists in determining what the testator intended by the expression, "any money remaining after my death." It is clear enough that whatever was intended to be embraced within that description, was to be divided between the two grand-children. Plaintiff in error contends that the testator intended by it to include the amount of actual cash in his possession at the time of his death, and nothing more. Defendant in error, on the contrary, maintains, that by the expression in question, the testator intended to include, not particularly the amount of cash on hand at the time of his death, but the residue of his entire personal estate after the payment of all debts and funeral expenses. The general rule undoubtedly is, that a simple bequest of money, in the absence of anything in the context to show that the word "money" is used out of its ordinary or popular signification, will not include personal estate in general, but will be confined to money strictly so called. (2 Williams on Executors, *1190.) On the other hand, it is equally clear that the word "money" or "moneys" is often employed in making testamentary disposition under circumstances hardly distinguishable from the present, in the general sense of property or personal estate. When the term is thus used, it most generally has reference to the residuum of the personal estate after certain charges upon it have been satisfied, such as the payment of funeral expenses and the like, as is claimed to be the case here. Moreover, an examination of the cases will show, that generally, where this construction has been adopted, the contrary view would have resulted in leaving a portion of the testator's estate undisposed of by the will,—a view which courts are always disinclined to adopt, on the ground that it is contrary to the presumed intention of the testator. Such

would be the case here if the word "money," as it occurs in the fifth clause of the will, is to be restricted to cash in the actual possession of the testator at the time of his death. After a careful consideration of the entire will, in the light of the authorities bearing upon the question, we are satisfied that both of the circumstances mentioned as having a controlling influence with the courts in construing the word "money" in its enlarged or extended sense, are present in this case, and therefore demand that construction. That the construction contended for by the plaintiff in error would result in making the great bulk of the personal estate intestate property, is manifest. That the term "money," in the connection used, was intended to express the residuum of the personal estate after the payment of all debts and funeral expenses, is strongly fortified by the implication arising from the use of the qualifying word "remaining," is equally clear.

This conclusion, however, is sought to be overcome by what we regard as a very strained and unnatural construction of the first clause of the will. The claim is, that the payment of the debts and funeral expenses is, by the introductory words of the will, made an express charge upon the real estate, to the exclusion of the personal estate. We perceive nothing in the language relied on that warrants such a conclusion. The fact that the dispositions of the will, including both realty and personalty, are preceded by the formula, "after the payment of funeral expenses and just debts, I give," etc., indicates no purpose on the part of the testator to specially charge his realty with such debts and expenses. The manifest intention of the testator in using the language in question was, to make all the bequests of the will, whether of personalty or realty, subject to the payment of his debts, leaving it to the law to determine the order in which the real and personal assets should be liable. And since the law requires the personal assets to be exhausted before resort can be had to the realty, (a fact which we must presume the testator had in his mind at

the time of drawing his will,) the reason is apparent why the final bequest in the fifth clause is preceded by the qualifying expression, "if there is any money remaining," etc. We are unable to perceive anything to which the word "remaining," as it occurs in the fifth clause of the will, could refer, except the residue of the personal estate after the payment of debts and funeral expenses; and hence we conclude that the term "money," qualified as it is by the word "remaining," was used to signify such residue. And our conclusion in this respect is strongly fortified by the further consideration, that any other construction would lead, as we have already seen, to making the great bulk of the personal estate intestate property.

In addition to this, we think the use of the expression, "money remaining," instead of, "personal estate remaining," or some like expression, is sufficiently accounted for by the fact that the great bulk of the personal property consisted, as is commonly said, of *loaned money*. This was true both at the time of making his will and at the time of his death. It was in this peculiar sense he doubtless used the word "money," as it covered, appropriately enough, all his personal estate, except a few insignificant chattels. Moreover, we think this view of the question is fully sustained by the authorities. Redfield on Wills, 442; 2 Jarman on Wills, *768, *et seq.; Higgins* v. *Dwen,* 100 Ill. 554; *Smith* v. *Smith,* 17 Gratt. 268; *Irwin* v. *Zane,* 15 W. Va. 646.

The next question to be considered arises under the first clause of the will. By it there is given to plaintiff in error "twenty acres off the west half of the north-east quarter of the north-east quarter of section 33," township 18 north, range 11, west of the third principal meridian.

The evidence shows that the testator never owned the north-east quarter of the north-east quarter of this section 33, or any part of it; but it also shows that he did own the north-west quarter of the north-east quarter of that section.

So far as appears from the record, the only lands owned by the testator in section 33 was the north-west quarter of the north-east quarter,—forty acres. No part of it was specifically devised or otherwise referred to in the will, and the same would, therefore, pass, under the fourth clause of the will, to the residuary legatee, unless it shall appear to have been devised to plaintiff in error, as is contended by his counsel, under the first clause of the will above quoted.

There is said to exist a latent ambiguity, arising under the evidence *dehors* the will; and that the provisions of the will, read in the light of this extrinsic evidence, sufficiently make it appear that the devise to plaintiff in error, under this first clause of the will, was of a part of this north-west quarter of the north-east quarter of said section 33. While the general rule undoubtedly is, that the intention of the testator is to be gathered from an inspection and consideration of the will, and from no other source, in case of latent ambiguity courts do and must listen to extrinsic evidence,—not for the purpose of contradicting or adding to the terms of the will, nor to wrest the words of the testator from their natural operation, but for the purpose of determining the existence or non-existence of latent ambiguity, (for a latent ambiguity can only be shown by extrinsic evidence,) and for the further purpose of enabling the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time the will was made, whereby to determine the intention of the testator. (*Gilmer* v. *Stone*, 120 U. S. 586.) "The law is not so unreasonable," says Mr. Wigram, "as to deny to the reader of an instrument the same light which the writer enjoyed." Wigram on Wills, (2d Am. ed.) 161. See, also, *Brearley* v. *Brearley*, 1 Stockt. Ch. 21; *Perry* v. *Hunter*, 2 R. I. 80.

It is further to be observed, that as a latent ambiguity is only disclosed by extrinsic evidence, it follows, that if removable at all, it may be removed by extrinsic evidence. (*Patch* v. *White*, 117 U. S. 210.) Mr. Redfield, in his work on Wills,

(volume 1, page 584,) lays down the rule, that where the description of the object or subject of a devise is erroneous and mistaken, extrinsic evidence is admitted to aid the construction, by showing to whom or to what the testator must have referred.

Latent ambiguities, as found by Chief Justice Tindal, in *Miller* v. *Travers*, 8 Bing. 244, and which might be explained by parol, fall into two classes : First, where the description of the devisee or subject matter of devise is clear on the face of the will, but on inquiry it is found that the words describe two or more persons or things with equal accuracy, so, unless it can be shown, by extrinsic evidence, to which the testator intended his words to apply, the devise must fail for uncertainty ; and second, where the description of the devise or of the devisee is correct in part and in part incorrect, as, where devisee's name is correctly given, but his residence, or some other circumstance descriptive of the person or thing, is incorrect. And the modern state of the law upon this subject is well illustrated in the recent opinion of the Supreme Court of the United States, wherein Mr. Justice Bradley, speaking for the court, said : "It is settled doctrine, that * * * such an ambiguity may arise upon a will, either when it names a person as the object of the gift, or a thing as the subject of it, and there are two persons or things that answer such name or description ; or secondly, it may arise when the will contains a misdescription of the object or subject, as, where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. The first kind of ambiguity, where there are two persons or things equally answering the description, may be removed by any evidence that will have that effect,—either circumstances, or declarations of the testator. (1 Jarman on Wills, 370 ; Hawkins on Wills, 9, 10.) Where it consists of a misdescription, as before stated, if the misdescription can be struck out, and enough remain in the

will to identify the person or thing, the court will deal with it in that way; or, if it is an obvious mistake, will read it as if corrected." *Patch* v. *White*, 117 U. S. 210.

Tested by these principles, it is very clear, that in the devise under consideration there is a latent ambiguity. On the face of the will the subject matter of the devise is clear, but on inquiry it is found that the descriptive words of the devise are, in part, false,—the parcel of land appearing to be devised did not belong to the testator. If, then, we may strike out of the description of the premises appearing to be devised, so much as is false, and enough remain in the will, interpreted in the light of surrounding circumstances at the time the will was made, to identify the premises devised, this case will fall within the class of cases of which *Patch* v. *White*, *supra*, *Allen* v. *Lyons*, 2 Washb. C. C. 472, *Winkley* v. *Kaime*, 32 N. H. 268, *Riggs* v. *Myers*, 20 Mo. 299, *Orphan Asylum* v. *Emmons*, 3 Bradf. 144, *Townsend* v. *Downer*, 23 Vt. 225, *Doe* v. *Roe*, 1 Wend. 541, *Mann* v. *Mann*, 1 Johns. Ch. 234, *Woods* v. *Moore*, 4 Sandf. 579, and *Emmert* v. *Hays*, 89 Ill. 12, are examples as to the subject devised; and *Gilmer* v. *Stone*, *supra*, *Vernon* v. *Henry*, 3 Watts, 385, *In re Gregory*, 34 Beav. 600, and *Button* v. *Tract Society*, 23 Vt. 336, are examples as to the object of devise.

As indicative of the extent to which these principles have been carried by courts of the highest respectability, and as showing the current of authority, we select a few examples of their application. In *Patch* v. *White*, the testator said, "and touching my worldly estate, I give, devise and dispose of the same in the following manner." He devised specific lots to near relatives, and, among others, to his brother "lot numbered 6, in square 403." He then gave to his son "the balance of my real estate, believed to be and consist of" certain named lots, but not mentioning lot 3, in square 406. And it was held that the testator intended to dispose of all his real estate, and thought he had done so; that in the devise to his brother

he believed he was giving his brother one of the lots he owned; that evidence might properly be received to show that the testator did not, and never did, own lot 6, in square 403, but did own lot 3, in square 406, and that the evidence, in connection with the context of the will, sufficiently showed an error in description, and that the lot really devised was lot 3, in square 406. *Allen* v. *Lyon* was a devise of a house and lot in Fourth street, Philadelphia, in the occupation of R. H. It appeared from the evidence that the testator did not own a house and lot in Fourth street, but did own a house and lot in Third street occupied by R. H., and it was held that the latter property passed under the will. *Winkley* v. *Kaime* was a devise of thirty-six acres of lot 37, in the second division in Barnstead, being the same testator purchased from J. P., and the evidence showed there was no such lot in the second division in that town, but that testator owned a part of lot 97 in that division, purchased from J. P. Held, that the part of lot 97 owned by testator, passed under the will. In *Orphan Asylum* v. *Emmons*, the testatrix devised *her* shares of the Mechanic's Bank stock. She had no bank stock except shares of the City Bank. Held, that the word "Mechanic's" must be rejected as inapplicable to any property owned by testatrix, and the rejection of the word left the bequest to operate upon any bank stock possessed by her, and so passed the City Bank shares. And in *Riggs* v. *Myers*, the devise was of the south-east and south-west quarters of section 4, town 60, range 38, devisee of the south-west quarter to have access to the Big Spring. Parol evidence was heard showing the testator never owned any land in section 4, town 60, range 38, but did own the south-east and south-west quarters of section 4, *town 59,* range 38, the south-west quarter of which was accessible to a big spring, and it was held that the latter quarter sections passed under the will.

And as to the identity of the object of the devise, the following may be taken as examples: *Gilmer* v. *Stone.*—Here

the bequest was of the testator's residuary estate, "to be equally divided between the Board of Foreign and the Board of Home Missions." The evidence showed several religious denominations, including the Presbyterians, had boards of home and foreign missions; that the testator was an elder in a Presbyterian church, and had, in his lifetime, always sent his contributions for home and foreign missions to the Presbyterian boards, and had contributed nothing to the mission boards of other denominations; and it was held, that this evidence, in connection with other bequests in the will made to the Presbyterian church, showed that the Presbyterian boards of home and foreign missions were the ones intended, and entitled to receive the bequest. And in *Vernon* v. *Henry*, a legacy was given to James Vernon Henry, described as a nephew of the testator, and son of the testator's deceased sister, Elizabeth. The legacy was claimed by James Vernon Henry, a *grand*-nephew of the testator and *grand*-son of Elizabeth, and also by Robert R. Henry, nephew of the testator, and only living son (at date of will) of Elizabeth. On extrinsic evidence, James was held entitled to the legacy. See, also, 1 Jarman on Wills, 376, *et seq.*

It is to be noted that the principle of construction contended for as applied to wills, has been recognized by this court in the case of deeds. See *Myers* v. *Ladd*, 26 Ill. 415, and *Swift* v. *Lee*, 65 id. 336.

In every case calling for construction, the question of first importance is, what was the testator's intention. As was said in *Finlay* v. *King's Lessee*, 3 Pet. 346: "The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail, although in giving effect to it some words should be rejected, or some restrained in their application, as materially to change the literal meaning of the particular sentence." But the embarrassment, in every case, arises in determining the just limitation upon

judicial inquiry as to intention. We have seen that in case of latent ambiguity, as in the present case, where it is shown that the description of the subject of the devise, as it appears on the face of the will, is false, in part, courts may look beyond the words of the will,—may place themselves in the position occupied by the testator when he executed the will, and view the testator's affairs as he viewed them, the better to determine the intention of the testator from the language of the will, after excluding what is shown to be false. This is all it is contended the court should do in this case, and to this extent, under the authorities, we may most certainly go. If, then, it shall appear, after rejecting the false words of the description, that sufficient remains to identify the lands intended to be devised, effect must be given to the devise accordingly.

It seems clear to us, from the will itself, that the testator intended to devise all his estate. Not only so, but it was his intention to devise "my real estate,"—not real estate which he did not own. It seems very clear to us, also, that he intended his son, plaintiff in error, should be a prominent sharer in his bounty. It seems to us certain that testator intended to devise lands owned by him in town 18, north of range 11, west of the third principal meridian; also, lands lying in section 33, in the same town, and owned by him; also, lands lying in the north-east quarter of said section, and owned by him; and also twenty acres off the west half of his lands in said quarter section. The testator in fact possessed just such lands, and we can not doubt, in the light of these facts, that the parcel of land in the mind of the testator when he made his will, was the twenty acres off the west half of the north-west quarter of the north-east quarter of section 33, town 18, range 11, because this tract of forty acres was the only tract owned by him lying in the north-east quarter of said section, or, indeed, anywhere in the section. This conclusion is reached, not by adding to the terms of the will,—not by in-

serting what was by mistake left out of the will, and thereby reforming it,—but by rejecting, or refusing to give effect to, the words, "*of the north-east quarter,*" where they occur for the first time in the description. And this rejection is made because it is conclusively shown that to this extent the description of the devise is false in fact. The township and range is certain; the section therein is certain; the quarter-section within the section is certain; the only land possessed by testator within the quarter section is certain; and the part off the west side of the testator's lands in the quarter section is also certain. Under such circumstances there can not be said to be any uncertainty as to the premises intended by the testator to be devised to his son. It was twenty acres off the west half of the north-west quarter of the north-east quarter of section 33. In thus giving effect to the devise, the false part of the description is rejected, and effect given to that part which is true; and this is done without, in the slightest degree, violating any positive rule of law or accepted canon of construction.

But it is insisted that the principle of *Kurtz* v. *Hibner*, 55 Ill. 514, is at variance with the views here expressed. An examination of the facts of that case will, we think, conclusively show that it is clearly distinguishable from the case now under consideration. In that case the frame of the bill and the offered evidence all proceeded upon the theory that a court of chancery might reform the will by correcting a mistake in description. The offer was to prove "that a mistake was made in drafting the will, by the insertion of the words *section thirty-two,* instead of *section thirty-three;*" that devisee "had been in the actual possession of the tract for a number of years, and upon the repeated promise of the testator, in his lifetime, that he would give the same to" devisee, she had made lasting and valuable improvements. And as to the other tract, the offer was to prove that devisee, at the death of the testator, "was in the actual possession of the forty-acre

tract as the tenant of the deceased, and that the draughts-man of the will, by mistake, inserted the word *one*, after the words *section thirty*, instead of *two*, so as to bequeath to James land in section 31 instead of section 32." There was no pretence, in that case, that by rejecting so much of the description as was false, enough of the description remained so as that the lands devised could be identified. The moment that the numbers of the sections were rejected, the devise failed for uncertainty. The only means of identification furnished by the description or the will lay in the numbers of the sections, as was said in *Bowen* v. *Allen*, 113 Ill. 53. When they were rejected, nothing was left by which the lands intended to be devised could be located within any one of the thirty-six sections in the township, unless new numbers of sections could be inserted in the description. To have done that would have been to add to the will, to substitute words not used by the testator, in place of those used by him,—in effect, to make a will for the testator. Wills are required by statute to be in writing, and courts are without the power of substituting for the written words of the testator, other and different words not used by him. Then, to permit the substituting of words not used, in place of words used, would not only render this provision of law inoperative, but it would overthrow the Statute of Frauds, and again open the door to all the evils that that law was intended to prevent. Every consideration impels us to deny the power of courts to add to or reform a will on the ground of mistake. The *Kurtz case* goes upon this principle, and finds support in the following American cases: *Fitzpatrick* v. *Fitzpatrick*, 36 Iowa, 674; *Hill* v. *Fenton*, 47 Ga. 455; *Sherwood* v. *Sherwood*, 45 Wis. 357.

It is also objected, that the decree gives to Rosina Decker the north-east quarter of the south-east quarter of section 28, etc., whereas, by the second clause of the will she is only given thirty acres of that forty-acre tract. There is certainly much force in the position of counsel for plaintiff in error in

respect to this branch of the case; but we agree with counsel for the defendants in error, that conceding the error to exist, it is not one of which plaintiff in error can take advantage, for it in nowise affects him. It is a familiar doctrine, that one will not be heard to complain of an error that does not injuriously affect himself.

It appears that after the execution of the will the testator exchanged the tract of land given by the third clause of the will to Oliver Decker and Rosina Decker, for a couple of lots in Hall's addition to the town of Virginia, which, by the decree, were given to Homer Decker, the residuary legatee. It is claimed by plaintiff in error, that by the transfer of the land the third clause of the will became void, by reason of there being nothing for it to operate upon, and that the after ac-quired lots could not pass by the residuary clause of the will,—or, in other words, that the lots received in exchange for the land descended to the heirs as intestate estate. We discover nothing in the will itself to indicate that it was the intention of the testator that it was to be confined in its operation to such lands as the testator owned at the time of the execution of the will. In the absence of anything to in-dicate such an intention, we perceive no reason why, under our statute, after acquired property will not pass, under the will, in the same manner as property owned by the testator at the time of its execution. The words of the statute are, that "testator shall have power to devise all the estate  *  *  *  which she or he hath, *or at the time of his or her death shall have,* in any lands," etc. (See Rev. Stat. chap. 148, sec. 1.) The language of the statute on this question is too plain to admit of serious discussion. See, in this connection, *Willis* v. *Watson,* 4 Scam. 64; *Peters* v. *Spillman,* 18 Ill. 370.

The circuit court erred in rejecting the offered evidence, and in not decreeing that plaintiff in error took, under the first clause of the will, twenty acres off the west half of the north-west quarter of the north-east quarter of section 33.

The decree of the circuit court is therefore reversed to the extent indicated, and the cause is remanded, with directions to enter a decree in conformity with this opinion. In all other respects the decree of the circuit court is affirmed.

*Decree reversed in part and in part affirmed.*