Mary Lich, Appellant, v. John Werling, Executor, Appellee.

1. WILLS—*how construed.* While it is true that a testator is presumed to use the words in which he expresses himself in their strict and primary acceptation and ordinary sense, yet it is also true that in ascertaining the intention of the testator effect must be given to all the language used, if it can be done, and likewise the court will look at the state of the property devised in endeavoring to ascertain from the language used the testator's intention.

2. WILLS—*"money" and "cash money" construed.* The word "money" as used in a will in reference to the residue of the personal property after the payment of legacies and debts, has often been held to include promissory notes. *Held,* in this case, that the words "cash money" included money loaned and evidenced by notes and mortgages.

Objections to executor's report. Appeal from the Circuit Court of Monroe county; the Hon. B. R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

CHARLES MORRISON, JOSHUA WILSON and WM. E. ERD, for appellant.

JOSEPH W. RICKERT, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This appeal is prosecuted from an order of the Circuit Court of Monroe county, overruling exceptions to the final report of appellee, as executor of the last will and testament of Catherine Spellmeier, deceased, the cause having been heard in that court on appeal from the County Court.

The following facts are disclosed by the record: Catherine Spellmeier, an aged German, and mother of the parties directly interested in this suit, died at her home in Monroe county, August 1, 1906, leaving a last will and testament, by which she appointed John Werling executor. The will was duly probated and appellee qualified and acted as executor. At the time of her death, the testatrix owned a small amount of household goods and a cider-press, worth in all probably about $35, had $40 in cash, and money loaned to the amount of $3590.74, represented by promissory notes and nearly all secured by mortgages. Her will which bears date January 17, 1902, after directing the payment of her just debts and funeral expenses, provided:

"Second, I give to my daughter Mary Werling, all my real estate, also all other personal property except cash money, which shall be divided as follows:

"Third. I give to my daughter Katie Mueller, nee Werling, three hundred dollars.

"Fourth. I give to my granddaughter Louisa Stumpf, nee Blittersdorph, three hundred dollars.

"Fifth. I give to my granddaughter Mary Wallhaus fifty dollars.

"Sixth. I give to my church fifty dollars.

"After the above amounts is paid all the rest of my cash money shall be equally divided between my son John Werling and my son Fred W. Werling and my daughter Mary Werling and my daughter Christina Bickelhaupt, nee Werling, each one to receive share and share alike."

The Mary Werling named in the will is now Mary Lich, the appellant herein. After the death of the testatrix, appellant filed a claim against the estate for $1508.48, a portion of which was for money furnished for repair work on the home place, but by far the larger part for services rendered the testatrix while appellant was keeping house for her. A controversy arose between appellant on the one hand and the others interested in the estate on the other, concerning the amount to be allowed appellant upon her claim and the amount she was entitled to receive under the will. On December 8, 1906, several months after the death of the testatrix, appellant with her counsel, Mr. Wilson, and the other parties interested in the estate with their counsel, Mr. Rickert, met at the office of the latter, where the differences between the parties were discussed. As a result of the meeting, appellant's claim was settled for the sum of $683.23, $500 of which was for services rendered by her to the testatrix and $183.23 for the repair work. At the same time the executor paid all the special legacies provided for in the will, amounting to $700, and out of the balance of the fund on hand, paid the sum of $400 each to the four residuary legatees named in the will, including appellant.

It is claimed by appellee that at the time of the said meeting, a full settlement was made between appellant and the other parties in interest, by which, after the payment of all claims against the estate, including hers, the special legacies and the costs of administration, the balance of the estate represented by the money loaned was to be divided equally among the four residuary legatees. On the other hand appellant

claims that only her claim against the estate for services rendered the testatrix and repairs to the home place were settled, but that no settlement was made or agreement arrived at as to the amount she was to receive from the estate under the will. On the same day appellant gave three written receipts to appellee, as executor, one for "all the personal property, except cash money, left to me by the second clause of last will of my mother Catherine Spellmeier, deceased," another for $683.23 in full of her claim and still another for $400 "for part payment of my heirship under last will of my mother, Catherine Spellmeier, deceased." She also appears to have known of the fact that the executor on the same day paid the special legacies provided for by the will and that he paid the sum of $400 to each of the other three residuary legatees, for which each of them gave a receipt very similar in terms to that given by appellant when she received the like amount. Appellee also produced witnesses who were present on the day named and who swore to facts tending to show that settlement in full of all matters in controversy was on that day made.

Appellant sought to meet these facts by the testimony of a witness who swore that nothing was settled at Rickert's office, while he was there, but it does not appear whether he was there or not during the time the settlement is finally claimed to have been made; also by the testimony of her attorney, Joshua Wilson, who stated that at the time in question she asked him if it would hurt her rights under the will if she accepted the offer made to her on her bill against the estate; that he told her it would not and she then said, "All right, I will accept it." This conversation, however, appears to have taken place outside of the room where the conference was being held and presumably the others did not hear it. The attorney also swore that nothing was settled at Rickert's office, excepting appellant's claim. If appellant was claiming then, as she does now, the proceeds of all the notes

owned by the testatrix at the time of her death, upon the theory that the "cash money" referred to in the will, included only the $40 which the testatrix had at the time of her death, it is hard to understand why appellant and her attorney, at the time in question, permitted the executor to pay all the specific legacies, provided for in the will and to pay each of the residuary legatees $400 apiece, she taking a like share, when under her claim as now made she was entitled to the whole estate, after the payment of debts and expenses of administration. The facts warrant the belief that a settlement of all differences was made between the parties in interest and we are of opinion that, as there was a controversy concerning the share of the estate appellant was entitled to under the will, and as to her claim for services and repairs, the disposal of the whole matter in the manner in which it was done, was a sufficient consideration for the settlement. Apart from the question of settlement, the controversy was in the court below and is here as to the meaning of the words "cash money" used in the will.

While it is true that a testator is presumed to use the words in which he expresses himself in their strict and primary acceptation and ordinary sense, yet it is a familiar rule of construction that in ascertaining the intention of the testator, effect must be given to all the language used if it can be done, and it is a further well-recognized rule that in the construction of a will, the court will look at the state of the property devised, in endeavoring to ascertain from the language used, the testator's intention. Fisher v. Fairbank, 188 Ill. 187.

The word "money" as used in a will in reference to the residue of the personal estate, after the payment of legacies and debts, has been often held to include promissory notes.

In the case of Decker v. Decker, 121 Ill. 341, the will provided "if there is any money remaining after my death, it shall be equally divided between Rosina Decker and Homer Decker." At the death of the tes-

tator there was only a few hundred dollars in actual money, while there were between seven and eight thousand dollars loaned money, and it was held that the bequest of money remaining, should be held to include the money loaned. In the opinion in that case it is said, "We think the use of the expression 'money remaining' instead of 'personal estate remaining' or some like expression is sufficiently accounted for by the fact that the great bulk of the personal property consisted, as is commonly said, of loaned money. This was true both at the time of making his will and at the time of his death. It was in this peculiar sense he doubtless used the word 'money' as it covered, appropriately enough, all of his personal estate, except a few insignificant chattels." Substantially the same thing can be rightly said of the facts in this case. At the time the will was made in 1902, the property of the testatrix consisted of a small farm worth as near as can be ascertained from the evidence, about a thousand dollars, her household property and the cider-press above mentioned, worth some $35, notes and mortgages aggregating the sum of $3350 and possibly from one to two hundred dollars in money. The will was drawn by a neighbor, evidently inexperienced in that work, who had to talk to her through an interpreter. He testified that she said at the time "she had enough money to pay all that was in the will and that if there was any money left Mary was to share the same as the others, John, Fred and Christina."

It therefore appears that the testatrix must have referred to her money loaned as well as actual money on hand, if there was any of the latter, by the term "cash money," as the actual money on hand, if any, was very insignificant in amount and wholly insufficient to pay even the specific legacies of $700. At the time of her death she had sold her home farm, the proceeds of which had been partially used by her, but the money she had loaned amounted to $3590.74, while there was only $40 in cash on hand.

As said in Decker v. Decker, *supra,* "the great bulk of the personal property consisted, as is commonly said, of loaned money." The cash money was insufficient by quite a considerable amount to pay the debts and costs of administration. While the words "cash money" are somewhat more definite than the word "money" alone, yet it appears clear to us from the context of the will and the circumstances surrounding the testatrix at the time it was made, that she intended to include in those words her money loaned and evidenced by her notes and mortgage. This view of the case was rightfully taken by the court below. For this reason and also for the further reason that appellant appears to have made a valid settlement of all her claims against the estate, with the other parties interested, the judgment of the court below will be affirmed.

*Affirmed.*