John F. Cahill, Administrator De Bonis Non with Will Annexed of Estate of Frederick D. Michael, Also Known as Nathaniel Bartok, M. D. Frederick, Robert B. Radford, Frederick Dalton and Daniel Bartok, Deceased, Plaintiff, v. Frederick Michael and Robert Lee Michael, Appellees. M. S. A. Michael et al., Appellants. William H. Bolling and James L. Michael, Coappellants. Connie Michael et al., Minors, by Arthur A. Sullivan, Guardian Ad Litem, Coappellants.

Gen. No. 41,566.

338

Opinion filed March 3, 1942.

Winston, Strawn & Shaw, of Chicago, for appellants; James H. Winston, Thomas A. Reynolds and Gerard E. Grashorn, all of Chicago, and L. A. Martin, of Lexington, N. C., of counsel.

Joseph Levinson, of Chicago, for certain coappellant.

A. A. McKinley, of Chicago, for certain other coappellant.

Arthur A. Sullivan, guardian *ad litem,* for certain other coappellants.

Ross & Watts, of Chicago, for appellees; Wadsworth Watts and Keith I. Parsons, both of Chicago, and C. R. Wharton and H. L. Koontz, both of Greensboro, N. C., of counsel.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

The Administrator With the Will Annexed of the Estate of Frederick D. Michael, deceased, brings this suit to have the will of the decedent construed. The

will nominated Frederick Michael as executor, but he was a nonresident and Martin J. O'Brien, Public Administrator, was appointed Administrator With the Will Annexed. O'Brien died and his successor in office, John F. Cahill, was substituted as plaintiff. Thirty-seven of the defendants, all heirs at law of the testator, appealed from a decree finding and decreeing that by his will Frederick D. Michael left the whole of his net estate to defendant Frederick Michael, a grand-nephew of the testator, but who is designated in the will as "my first cousin." Frederick Michael is not an heir at law, as his father, Robert Lee Michael, a defendant, is living. The case was determined by the chancellor upon the pleadings, depositions and testimony taken in open court. The pleadings consisted of the complaint, the answer of Frederick Michael setting forth his claim under the will, and the answers and replies of the appellants. We will hereafter refer to Frederick D. Michael, testator, as the "testator"; to Frederick Michael, a defendant and appellee, as "Frederick," and to the appellants, as "heirs at law." Robert Lee Michael has not appealed from the decree.

The testator, a bachelor, was born in 1868 on a farm in Davidson county, North Carolina, a few miles distant from Lexington, the county seat. His father was at one time sheriff of the county. His parents had eight children. In early manhood the testator went West. Most of his brothers and sisters remained in Davidson county, where they or their descendants still live. It is clear from the record that the testator was an intelligent, shrewd man. That he received a good education is shown by the fact that he attended Normal school in Lexington. In Frederick's brief it is stated that "there is no question that Mr. Michael was a shrewd businessman. But the record does not disclose that his literary ability was equivalent to his business acumen." Short excerpts from four letters written by the testator to relatives are cited in support

of the statement as to the testator's literary ability. It is a matter of common knowledge that businessmen, as a rule, do not attempt to show "literary ability" in their correspondence, especially where, as in this case, the testator wrote the letters himself, and to members of his family. Numerous letters written by the testator evidence that he was able to write fluently and to express himself with clarity. The fact that he occasionally misspelled a word is not, as Frederick argues, a matter of any importance in interpreting the will. History tells us that some of the brightest men were poor spellers. In any event, misspelling plays no part in the interpretation of the will. The testator became prosperous operating hotels, and at one time he was president of the Laclede hotel, in St. Louis. He left an estate valued at more than $200,000. He traveled extensively in the United States and visited Europe, Alaska and Cuba. Photographs of the testator portray an intelligent man with an alert expression.

The testator left forty-four heirs at law and next of kin. That he liked Frederick is clear. Certain evidence, the competency of which is challenged by the heirs at law, indicates that he disliked his brother James L. Michael and his nephew John M. Michael. It is contended by Frederick that there is evidence that tends to show that the testator, in the later years of his life, was indifferent toward all of his relatives save Frederick and the latter's father. We find abundant evidence, however, that the testator had an affectionate regard for all of his relatives except his brother James and his nephew John. He wrote a letter to his brother William and the latter's family on January 12, 1935, in which he expressed love for William and his family, recalls days of his boyhood, and states that he "shall be pleased to help you all I can to save your property." He closes the letter by stating, "When I hear from you again I shall be pleased to answer soon." The testator wrote numerous letters to relatives in which he

showed affection for them; in some he expressed sympathy for their sorrows; in some he inclosed checks, and in others he states that he was sending gifts to certain relatives. In our judgment the evidence does not warrant a finding that the testator had any feeling against any of his relatives save his brother James and his nephew John.

On June 8, 1939, the testator's will was admitted to probate in the Probate Court of Cook county. It reads as follows:

"I, Frederick D. Michael, of the City of Lexington, Norrh Carolina, a bachelor, and having no descendants, make, publish and declare this instrument as my last will and testament.

"First: Without the necessity of first obtaining an order or allowance by the Probate Court, my executors after my death shall pay all of my just debts and the hereinafter mentioned expenses of my last illness and funeral.

"Second: Upon my death, wherever I happen to be, I hereby direct that my executors shall order the undertaker in said place to embalm my body, place it in a suitable coffin and ship it to the undertaker at Lexington, North Carolina. I furthermore direct my executor to instruct said undertaker at Lexington, North Caroline, to bury my body at the Shiloh Church Cemetary in Davidson County, North Carolina, by the grave of my dear mother and father; to have the grave dug; to get a suitable tombstone for my grave, and to secure the services of the Shiloh Church minister to officiate during said burial. I also direct my executor to pay all of the expenses connected with the duties set forth in this paragraph out of the general assets of my estate.

"Third: I give, bequeath and device all the rest and residue of my estate, whether real or personal, and wheresoever situated, share and share alike, to my first cousin, Frederick    Michael, son of R. L. Michael,

311 East Hendrix Street, Greensboro, North Carolina. If my cousin, Frederick    Michael, shall have died before me, his or her share shall be delivered per stirpes to his descendants living at my death:

"FOURTH: I nominate and appoint Frederick Michael, of 311 East Hendrix Street, Greensboro, North Carolina, sole executor of this will; said executor to serve without bond, and generally have full power and authority to deal with my said properties in the same manner that I could do if living. No property should be sold until a reasonable price can be had. And the executor in making distribution of the principal hereunder, may do so in money, securities or other property, and he will first deduct his necessary expenses and salary for any time he has put in managing and acting as such executor; and his judgment as to what shall constitute a just and proper division or apportionment among the beneficiaries shall be binding and conclusive upon all parties.

"FIFTH: All other wills or documents of any kind previously written by me is hereby cancelled and marked void, as this is intended to be my last will.

"IN WITNESS WHEREOF, I have hereunto set my hand to this, my last will and testament, on this 13th day of May, A. D. 1936.

"FREDERICK D. MICHAEL."

(Here follow the attestation clause and subscription by witnesses.)

It is conceded that this will was executed by the testator, and the instant contest arises over the meaning of paragraphs Third and Fourth.

The general rules of law that are applicable to the construction of wills have been settled by our Supreme Court, and it is unnecessary for us to restate them here.

The theory of the heirs at law is that:

"1. Under settled Illinois law, Fred Michael's claim to the whole estate is inherently untenable. The trial

Judge completely misapprehended the meaning and requirements of the Illinois Statute of Wills, and has entered a decree which is wrong.

"2. Under settled Illinois law, the only permissible method by which to ascertain Mr. Michael's intention is from what he said in his Will, and the rule is 'inflexible' that the meaning of what a testator says in his Will cannot be contradicted, altered or detracted from, either by 'guessing' at what he may have intended to say, or by extrinsic evidence.

"3. Admittedly the testator intended to bequeath *something* to his grandnephew, said Fred Michael, because the Will mentions him as a beneficiary *by name.* But what the testator intended to bequeath to Fred Michael was not *the whole,* but only *a share or part,* of the estate. The language in the Will being the antithesis or opposite of a direction bequeathing to Fred Michael the whole estate, it is not capable of being 'bent' or 'blended' so as to carry the meaning of bequeathing *the whole,* to Fred Michael.

"4. Under settled law the intention of the testator so expressed in the Will cannot be rejected and a *contrary* intention derived from extrinsic evidence substituted.

"5. Ascribing to the language of this Will its usual and ordinary meaning, as is required under the law of Illinois,—it is impossible to say that the estate of the testator has been effectively bequeathed to anybody; and the 'inevitable consequence' under settled Illinois law is that Mr. Michael's estate is intestate, and as such is to be distributed under the Statute of Descent among the natural objects of his bounty, *i.e.,* all of his heirs and next of kin, including said Fred Michael's father, R. L. Michael."

"The theory of Frederick Michael is that the will in question is a document obviously inexpertly prepared, but, nevertheless, by resort to the processes of construction always available in will construction cases

the intention of the testator to devise or bequeath the residuary estate to Frederick Michael is clear *from the language of the will itself.* It is the theory of Frederick Michael also that the circumstances surrounding the testator may be viewed by the court as an aid in construing the will for the purpose of explaining and understanding what the testator has written''; that ''the heirs at law are not favored over legatees in construing wills, and a will will be held void for uncertainty only as a last resort,'' and that ''the extrinsic evidence showing the close relationship between the testator and his namesake Frederick Michael as opposed to his lack of interest in the heirs at law removes any doubt that there may be that the testator by his language intended Frederick Michael to take the entire residue.''

It is the settled rule of law that the object of the construction is to ascertain the intention which the testator has expressed in the language of the will, and not one which he may be supposed to have had in his mind but has not expressed.

The testator made no attempt to make any devise or bequest until he drafted paragraph Third of the will. The first sentence in that paragraph reads: ''THIRD: I give, bequeath and device all the rest and residue of my estate, whether real or personal, and wheresoever situated, *share and share alike,* to my first cousin, Frederick Michael,'' etc. (Italics ours.) This sentence contains the only provision in the will which bequeaths, or attempts to bequeath, anything to Frederick. Our Supreme Court has determined the meaning of the words ''share and share alike.'' In *Jenne v. Jenne,* 271 Ill. 526, the court had before it for interpretation a clause in a will that contained the same words. The court held (p. 534): ''The words 'share and share alike' are never used to indicate the quantum or amount that is intended to be given. The sole meaning of such words and the sense in which they

are invariably used are simply to denote an equal division among members of a class or number of beneficiaries, legatees or devisees in a will." If we were obliged to decide the instant contest upon the sentence in question alone, the language of that sentence would, in our opinion, preclude an interpretation that Frederick was to receive the whole of the residuary estate. But our judgment is fortified by three subsequent provisions in the will. The last sentence of paragraph Third reads as follows: "If my cousin, Frederick Michael, shall have died before me, *his or her share* shall be delivered per stirpes to his descendants living at my death:" (Italics ours). Here the testator had in mind that Frederick might die before him, and he provided that in that event the *"share"* that Frederick would have received had he survived the testator, "shall be delivered per stirpes" to Frederick's descendants living at the time of the testator's death. Then, in paragraph Fourth of the will is the following: "and his [the executor's] judgment as to what shall constitute a just and proper *division or apportionment among the beneficiaries* shall be binding and conclusive upon all parties." (Italics ours.) It is not surprising that the parties disagree as to what the testator intended by this provision. However, it is clear from the language that we have italicized that the testator had in mind a division or apportionment of his estate "among the *beneficiaries.*" Thus, in three provisions of the will there is language that shows that the testator did not intend that Frederick or any one person was to receive the whole estate. The following language in paragraph Fourth, "and he will first deduct his necessary expenses and salary for any time he has put in managing and acting as such executor," is not without some significance in determining the intent of the testator, for if he thought that he was bequeathing to Frederick his whole estate, which is a large one, it would seem unlikely that he would authorize Frederick,

as executor, *first* to deduct from the estate a salary for services. The words in question are consistent with the interpretation that the testator intended that the estate was to be divided or apportioned among a number of beneficiaries. Counsel for Frederick interpret this language as an attempt by the testator to minimize inheritance and estate taxes. This interpretation is, of course, a mere guess; it is certainly not a reasonable interpretation of the language. The provision states: "And the executor in making *distribution* of the principal hereunder . . . will first deduct his necessary expenses and salary . . . ." Distribution is made after taxes have been paid. Plainly, the testator intended by the language in question that before Frederick made a division or apportionment among beneficiaries he should first deduct his expenses and "salary." After a careful study of this will in the light of the law that governs the manner in which a will shall be interpreted, we have reached the conclusion that it was the testator's intention that no one person was to take the whole of his estate. That the testator intended to leave Frederick a part of his estate is clear, but what portion of the estate the testator intended him to take cannot, in our judgment, be determined from the language of the will.

We have given careful consideration to the able and ingenious argument of counsel for Frederick in support of their contention that it can be determined from the language of the will that the testator intended Frederick to take the entire residuary estate As to the phrase "share and share alike" counsel state that it "was obviously merely dragged in by the testator and was ineptly used without any intention on his part to imply that persons other than Frederick Michael were to take under the will. *The phrase should therefore be disregarded.*" (Italics ours.) Counsel's statement that we should disregard what we consider important language in the will suggests an easy, but not a proper or just way to interpret the

will.  If we followed counsel's suggestion we would destroy the will made by the testator and create a will not made by him.  Under settled rules for construing wills all of the language used in the will must be taken into consideration.  The intention of the testator must be determined by the language of the will itself, and we cannot disregard that intention, if expressed in the will, and substitute a contrary intention founded upon guess or conjecture, or from extrinsic evidence.  In *Stevenson v. Stevenson,* 285 Ill. 486, the Supreme Court said (pp. 493, 494): "Our Statute of Wills requires every last will and testament to be in writing, signed by the testator and duly witnessed.  This court is firmly committed to the doctrine that extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed by the will itself, *and that no words whatever can be added to or taken from a will that will have the effect of changing the plain meaning of the testator as expressed in the will.  Kurtz v. Hibner,* 55 Ill. 514; *Starkweather v. American Bible Society,* 72 id. 50; *Bishop v. Morgan,* 82 id. 351; *Bingel v. Volz,* 142 id. 214; *Williams v. Williams,* 189 id. 500; *Vestal v. Garrett,* 197 id. 398; *Graves v. Rose,* 246 id. 76; *Clancy v. Clancy,* 250 id. 297; *Alford v. Bennett,* 279 id. 375." (Italics ours.)  But counsel for Frederick further argue that if a meaning must be given to the phrase "share and share alike," "may not the testator have intended by the inclusion of the phrase 'share and share alike' to refer specifically to each parcel of property in his residuary estate, giving *all shares alike* to Frederick Michael?"  This argument, in our judgment, is lacking in force and persuasiveness, and it amounts to a mere conjecture or guess.  *A fortiori,* it runs counter to the Supreme Court's definition of the phrase.

Counsel for Frederick argue that the evidence shows that for the last five years of the testator's life he did not keep in touch with his relatives in

Lexington and was completely indifferent to them; that the evidence further shows that during the later years of his life the testator confined his family interest and affection to Frederick and the latter's wife and father, and counsel contend that this evidence should be given great weight in construing what the testator has written in his will. We have heretofore stated our conclusions as to what the evidence shows as to the feelings of the testator toward the different parties to this suit. The law on the subject is plain. In *Karsten v. Karsten,* 254 Ill. 480, the court said (p. 484): "Inasmuch as the statute requires wills to be in writing and attested by witnesses, the settled rule is that while surrounding facts and circumstances may be proved to explain a latent ambiguity which is not found upon the face of the instrument itself, extrinsic evidence cannot be admitted to explain an ambiguity which appears on the face of the will or to supply its omissions and deficiencies, since that would be to make a will for the testator. Under the statute, that, only, is the will of the testator which is in writing and signed by him, and the statutory provisions would be rendered nugatory and the door opened to all the evils which the law requiring wills to be in writing and attested was designed to prevent, 'if, when the written statement failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied or its inaccuracies corrected from extrinsic source.' (1 Jarman on Wills, — 4th ed. — 409.) Extrinsic evidence is a mere aid to construction and is never admissible for the purpose of making a will for the testator, even if it establishes the fact that he intended to make one, if he did not, in fact, do so." In *Engelthaler v. Engelthaler,* 196 Ill. 230, the court said (p. 234): "Parol testimony cannot be admitted to explain or clear up a patent ambiguity, that is to say, an ambiguity, which appears upon the face of the will itself. Parol evidence has been admitted for the purpose of explaining

or clearing up a latent ambiguity, but, in the case of a latent ambiguity, the will seems to be certain and without ambiguity for anything that appears upon its face, but there is some collateral matter outside of the will, which gives rise to the ambiguity. (1 Jarman on Wills, — 3d Eng. ed. — chap. 13, p. 399; *Decker v. Decker, supra* [121 Ill. 341]; *Kurtz v. Hibner, supra* [55 Ill. 514].) In the case at bar, the ambiguity is a patent one, as it appears upon the face of the will of Joseph Engelthaler. Therefore, parol testimony could not be introduced to explain it.'' It is our judgment that the ambiguity in the instant will is a patent one, and the evidence relied upon by counsel for Frederick could not be used to contradict the language of the will. *Rettig v. Zander*, 364 Ill. 112, cited by counsel for Frederick, recognizes the principle that we have stated. There the court said (p. 120): ''While parol evidence is not properly admitted to show what the testator intended to write, it may be admitted where its effect is merely to explain or to make certain what the testator has written.''

The heirs at law strenuously complain that the court seriously erred in admitting certain evidence offered by Frederick upon the plea of his counsel that it tended to explain the circumstances surrounding the testator at the time of the execution of the will and would enable the court to interpret the words of the will in the light of the circumstances in which it was written. Over the objection of the heirs at law Frederick was allowed to prove by Miss Bernier, a trained nurse at Misericordia hospital in New York, that when the testator was confined in that hospital, in May and June, 1936, he told her that he had left all his estate in case of his death to his namesake (Frederick). Other evidence of a somewhat similar nature was also admitted over the objection of the heirs. The evidence given by Miss Bernier was clearly incompetent. In *Quigley v. Quigley*, 370 Ill. 151, 155, the court said: ''There was testimony that the testatrix had made

statements that she wanted to leave everything to Charles. This evidence was clearly incompetent, for statements of the testatrix, either before or after the making of the will, cannot be received to prove what she intended by the written words of the will. (*Peet v. Peet,* 229 Ill. 341.)'' (See, also, *Chicago Daily News Fresh Air Fund v. Kerner,* 305 Ill. App. 237.) In the *Quigley* case the chancellor stated that he had reached his conclusion without considering the evidence in question, and the Supreme Court stated that because of that statement it would not reverse the case for that error, alone. However, the decree was reversed. In the instant case the chancellor not only admitted the evidence over the objection of the heirs at law, but later, after a motion to strike had been made and argued, he refused to strike it. As the heirs at law argue, the inference is strong that this incompetent evidence influenced the decision in the cause. Evidence such as was given by Miss Bernier runs counter to the Statute of Frauds, it invites perjury, and tends to destroy the intent of testators as manifested in their wills.

Counsel for Frederick argue that the testator clearly intended that Frederick should benefit by the will and ''if this will is stricken down Frederick Michael will not get a penny.'' We may say in answer to this argument that we have no right to make a will for the testator nor have we the right to unmake the will that he executed by disregarding important words in it.

Holding, as we do, that the testator by the will in question did not dispose of any of his estate to anyone, and that he died intestate as to the whole of his estate, the decree of the Circuit Court of Cook county is reversed, and the cause is remanded with directions to enter a decree in conformity with the views herein expressed.

*Decree reversed and cause remanded with directions.*

SULLIVAN and FRIEND, JJ., concur.