JANE HUFFMAN *et al.*

*v.*

NOAH YOUNG *et al.*

*Opinion filed November 8, 1897—Rehearing denied December 22, 1897.*

1. WILLS—*words may be restricted so as to carry out the intention.* If the testator's intention is apparent and is not contrary to some rule of law it must prevail, although, in giving effect thereto, some words must be rejected or so restricted in their application as to materially change their literal meaning.

2. SAME—*false words of description of devise may be stricken out.* In arriving at the intention of the testator false words of description of devised premises may be stricken out, and if enough remains to identify the premises intended to be devised the will may be read and construed with the false words eliminated.

3. SAME—*illustration of rule that devise may be sustained by striking out false words of description.* A devise of sixty-two and one-half acres of land "off the east side of the north-east quarter" of a certain section will be sustained by striking out the words "off the east side," where it appears that all the land owned by the testator in that quarter was sixty-two and one-half acres, which lay in the north end thereof, the rest of the eighty being owned by other parties.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

This was a proceeding in chancery for partition and an accounting of rents, etc., brought by plaintiffs in error in the Vermilion circuit court. The bill alleges that the parties complainant and defendant are the owners of a strip of land seventeen rods in width off the west side of the east half of section 20, township 21, north, range 11, west, in Vermilion county, Illinois, except about three acres off the south end; that they derived title thereto, by descent, from Charles S. Young, who died testate, but without making disposition of the said strip; that testator left undevised, and as intestate property, about 800 acres of land; that at the time of making said will, and at testator's death, there were located on said strip three dwelling houses, each fronting on a road running along the west side of said strip, two of which were occupied by testator's daughters; that the greater portion of the east half of the north-east quarter of said section was devised to Noah Young as "62½ acres off the east side of said quarter section;" that the strip sought to be partitioned is the balance of said 80-acre tract; that defendant Noah Young is in possession of said strip, and has received the rents thereof since testator's death. The bill alleges that five of defendants are minors, and prays for partition and an accounting of the rents and profits. A guardian *ad litem* was appointed by the court for the minor defendants.

The adult defendants, except Noah Young, failed to answer, and were defaulted. Noah Young in his answer averred that he was the sole owner of said strip; that he derived title thereto by virtue of the last will of Charles S. Young, and relied upon the following clause of the will as his evidence of title:

"*Item 3.*—I give and devise to my son, Noah Young, the north-west quarter of section twenty-one (21), town-

ship twenty-one (21), north, range number eleven (11), west of the second principal meridian; also 62½ acres off of the east side of the north-east quarter of section number twenty (20), township and range aforesaid."

The answer admits that there are three houses on said strip, and that two were, at testator's death, occupied by two of testator's daughters, but avers said daughters were occupying them as tenants of testator; admits possession, but denies having received any rents except what he had expended for taxes, etc.; denies that testator did not make any disposition of the strip in controversy, and avers that the same is devised to him in the third clause of said will; avers that when said testator made his will this defendant was, and now is, the owner of 160 acres adjoining said strip on the west, and that testator owned the 160 acres on the east of said strip; that the homestead was on the last named 160 acres, and that the homestead, 160 acres, and the land owned by testator in the east half of the north-east quarter of section 20, (the land in controversy,) constituted what was known as the "home farm," and that testator had long purposed giving the "home farm to Noah, because he was the eldest son and the owner of the adjoining land on the west;" avers that when said will was made the Chicago and Eastern Illinois Railroad Company owned a right of way across said east half of the north-east quarter from north to south, one hundred feet wide, which right of way was three hundred and thirty-three feet west of the east line of the 80-acre tract; that in addition to said right of way there was laid out, off the south end of said 80-acre tract, a part of the village of Bismarck; that on the east side of the right of way the plat covers fifty-four rods north of the south line of said tract, and on the west the plat extends twenty-six rods north; that decedent, at the time of making his will and at his death, did not own any part of said village west of said right of way; that all the land owned and claimed by testator in said east half of the

north-east quarter was about 62½ acres; that the same was off the north end, rather than the east side, and was exclusive of the right of way of said railroad company; that if the strip is partitioned as prayed for, he will have but 48 acres instead of 62½ given to him by said will, and that a part of the land will be cut off from any highway and will not be accessible from his other lands; denies that testator left any lands not disposed of by his will, but avers that as to a part of the lands the will was held void by the circuit court of said county for want of certainty in the designation of beneficiaries, and that the said 800 acres had been partitioned.

The complainants put in a replication to the answer, and on the hearing the defendants called as a witness E. R. E. Kimbrough, who testified that "Charles S. Young, at the time of making his will and at the time of his death, owned but 62½ acres in the east half of the north-east quarter of section 20, township 21, north, range 11, west of the second principal meridian, and this was off the north end of the tract, and was exclusive of the right of way of the Chicago and Eastern Illinois Railroad Company, one hundred feet wide, which was owned by said railroad company in fee. The right of way extends across said land from north to south, and is about three hundred and thirty feet west from the east line of the said tract. Charles S. Young owned 62½ acres over and above the right of way, on the north end, rather than off the east side thereof. He did not own the south end, which was a part of the village of Bismarck. The allegations of fact alleged in the answer of Noah Young are true as therein stated, except such allegations as are only the conclusions of the pleader. At the time the will was executed, and at the time of the death of said testator, Noah Young, the defendant and eldest son of the testator, owned and occupied the 160 acres of land adjoining the 62½ acres on the west. By the will he was given the lands adjoining the 62½ acres on the east. The home farm consisted of

this 62½ acres and the adjoining lands on the east.   Testator owned no land on the north or south of this 62½ acres.   There is no access to that part of the 62½ acres west of the railroad, except from the west side of the north-east quarter of section 20, as aforesaid.   The 'home farm' was a compact body of land, and was specifically devised by the testator, unless the contention of the complainants is true as to a part of 62½ acres; that the latter tract contained the land owned by Noah Young, with the homestead of testator, which is specifically given to said Noah Young by the will; that, exclusive of said railroad right of way and the land occupied by the village of Bismarck, there are but 62½ acres of land in said east half of the north-east quarter of section 20, and that was all the land owned by said testator in said east half at the time of making the will and at the time of his death."

HARVEY C. ADAMS, for plaintiffs in error.

E. R. E. KIMBROUGH, and JAMES A. MEEKS, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Whether the 14½ acres of land in controversy are to be regarded as intestate property belonging to the heirs of Charles S. Young, deceased, and as such subject to partition, or whether they passed to the defendant Noah Young, depends upon the construction to be placed upon the will of Charles S. Young.   The will was made an exhibit to the answer of Noah Young, and among other provisions it contains the following:

"*Item 3.*—I give and devise to my son, Noah Young, the north-west quarter of section twenty-one (21), township twenty-one (21), north, range number eleven (11), west of the second principal meridian; also 62½ acres off of the east side of the north-east quarter of section number twenty (20), township and range aforesaid."

There is no question or doubt in regard to the first tract of land named in the above bequest, but as to the other tract, it was not owned by the testator at the time of making the will or at his death. The following plat shows the land in dispute, and also the land held by other parties embraced in the description named in the will:

From the plat and the other evidence introduced on the hearing, it appears that the Chicago and Eastern Illinois Railroad Company owned a right of way consisting of over six acres which would fall within the description given in the will, and a part of the south end of the tract named in the will constituted a part of the village of Bismarck. The evidence showed that the testator did own

62½ acres in the 80-acre tract, but not 62½ acres off the east side. It is manifest the testator never intended to devise land that he did not own, but his intention doubtless was to devise that 62½ acres of land that he did own in the north-east quarter of section 20. In the construction of wills, as has often been declared by this and other courts, the great and important question is to arrive at the intent of the testator, and when the intent can be ascertained, and it is not contrary to some positive rule of law, it must prevail, although in giving effect to it some words may be rejected or so restricted in their application as materially to change the literal meaning of the particular sentence.

In *Decker* v. *Decker,* 121 Ill. 341, where by the literal reading of the language of the will the testator had conveyed land which he never owned, words were rejected to carry out the intent of the testator. It is there, among other things, said (p. 352): "Tested by these principles, it is very clear that in the devise under consideration there is a latent ambiguity. On the face of the will the subject matter of the devise is clear, but on inquiry it is found that the descriptive words of the devise are, in part, false. The parcel of land appearing to be devised did not belong to the testator. If, then, we may strike out of the description of the premises appearing to be devised so much as is false, and enough remain in the will, interpreted in the light of surrounding circumstances at the time the will was made, to identify the premises devised, this case will fall within the class of cases of which *Patch* v. *White, supra,* (and many other cases named,) are examples as to the object of devise."

The defendant Young in this case does not seek to inject into or add to the will any words which may explain the real intent of the testator to devise him the land. He does not desire to add a word or sentence to the will. He only asks that the false words found in the description of the premises devised may be stricken out,—words

that place the testator in the false attitude of devising lands he never claimed or owned.

What was said in *Whitcomb* v. *Rodman*, 156 Ill. 116, applies with much force here. It is there said (p. 125): "While words cannot be added to a will, yet in arriving at the intention of the testator, as has been shown by the authorities, so much as is false in the description of the premises devised may be stricken out, and, after striking out the false description, if enough remains to identify the premises intended to be devised, the will may be read and construed with the false words eliminated therefrom."

Adopting the rule established in the cases cited, and striking out the words "off of the east side," the third item of the will will read: "I give and devise to my son, Noah Young, the north-west quarter of section twenty-one (21), township twenty-one (21), north, range eleven (11), west of second principal meridian; also 62½ acres of the north-east quarter of section number twenty (20), township and range aforesaid." This description is sufficiently definite to include the land in dispute.

Reliance, however, is placed upon *Bingel* v. *Volz*, 142 Ill. 214. Upon an examination of that case it will be found that there is no inconsistency between it and the *Decker case* and the case of *Whitcomb* v. *Rodman*. In the *Bingel case* an attempt was made to reform a will by striking out certain words and inserting others, which it was held could not be done. No effort is made here to strike out words and insert others in their place, but all that is asked here is, that certain false words in the description of the premises may be stricken out, which the *Bingel case* holds may be done, as is apparent from what is there said, as follows (p. 225): "Doubtless, if there were repugnant elements in the description employed in the devise in question, and if the description, after rejecting a repugnant element, were complete in itself, so as to accurately and sufficiently describe the land intended to be described, that rule of

construction might be adopted. * * * The difficulty of the description as it appears in the devise is, that it substitutes 'north-west' for 'south-west,' and the correction of the description so as to make it apply to the right tract requires not only that one of these words should be stricken out but that the other should be inserted. It involves more than construction—it requires reformation; and in this State, at least, courts of equity have persistently refused to entertain bills to reform wills." Nothing of the character mentioned in the case cited is claimed here.

We think the decree of the circuit court dismissing the bill was correct, and it will be affirmed.

*Decree affirmed.*