(No. 11647.—Reversed in part and remanded.)

RALPH W. STEVENSON et al. Appellants, vs. JOHN F. STEVENSON et al. Appellees.

*Opinion filed December 18, 1918.*

1. WILLS—*extrinsic evidence is never admissible to vary intent expressed in will.* Extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed by the will itself, and no words can be added to or taken from a will that have the effect of changing the plain meaning of the testator expressed therein.

2. SAME—*when will will be sustained after rejecting words in false description in devise.* Where false words are rejected in an ambiguous description in a devise in a will the will will be held valid if the remaining part of the description is sufficient to identify the subject of the devise in accordance with the facts and circumstances existing when the will was made, when considered with all the other terms and provisions of the will.

3. SAME—*nothing can be added to description in devise in lieu of false words rejected.* Nothing can be added to the description in a devise or inserted in lieu of false words rejected for the purpose of identifying the property devised unless the words added or inserted are authorized by the express terms and provisions of the will itself when the whole will is fully considered.

4. SAME—*presumption that testator intended to dispose of all his property cannot be applied to defeat intention expressed in will.* The presumption that a testator intends to dispose of all of his property by his will and that he does not intend to die intestate as to any of his property is never indulged in to the extent of defeating the will or of construing it against the manifest intent of the testator as therein expressed when all of the will is considered.

5. SAME—*court is not authorized to supply the words "my real estate" or their equivalent.* It is only when the will itself uses the words "my real estate," "all my lands," or their equivalent, that courts are authorized to consider such words when determining· whether enough remains, after striking out false words of description used in a devise, to identify the land devised.

6. SOLICITORS' FEES—*when refusal to allow solicitor's fees is proper.* In a partition proceeding by the heirs, if the executor files a cross-bill asking for a construction of the will he will not be entitled to solicitor's fees for services in merely resisting the rights

of the complainants to partition nor for obtaining a construction of unambiguous provisions of the will, and if there is no evidence upon which to base the allowance the court may refuse it.

DUNN, CARTER and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

O'HARRAS, WOOD & WALKER, and MACK & MACK, for appellants.

ORVILLE F. BERRY, SAMUEL NAYLOR, and HARTZELL, CAVANAGH & MARTIN, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

John Stevenson died August 31, 1916, leaving surviving him Margaret Stevenson, his widow, and Thomas M. Stevenson, Nettie Hancock, Ralph W. Stevenson, John Franklin Stevenson and Emma Gunning, as his only children, and seven grandchildren, children of two deceased daughters, as his only heirs-at-law. He died seized of the southeast quarter of the southwest quarter of section 5; the middle third and the north half of the east third of the northeast quarter, the east half of the east half of the southwest quarter, a strip ten feet wide off the west side of the southeast quarter, and the east half of the southeast quarter, all in section 8; the east half of the southeast quarter of section 9, the east half of the west half of the northeast quarter of section 16, and the west half of the northwest quarter of section 28, 440 acres, more or less, all in township 6, north, range 7, west of the fourth principal meridian, in Hancock county, and worth from $150 to $175 an acre. The homestead upon which the deceased was residing at the time of his death is on the southeast quarter of section 8. The deceased also left considerable personal property, which was more than sufficient to pay all of his debts. He had executed his last will and testament on August 18, 1916, and the same was probated on September 30, 1916, in said county; and M. P.

Berry was appointed as executor and qualified. The widow of the testator filed her written renunciation of the provisions of the will, electing thereby to have her homestead and dower interests in said lands set off to her and to take her part of the personal property under the statute. Thomas M. Stevenson died intestate March 12, 1917, leaving him surviving Charlotte J. Stevenson, his widow, Florence Stevenson, his daughter, and Catherine A. Head, a minor granddaughter, as his only heirs-at-law. Fred Salm, Jr., was appointed administrator of his estate and also guardian of said minor. On September 12, 1916, the three children first above named and the seven grandchildren of the testator filed a bill in the circuit court of Hancock county for the partition of said lands, and made parties defendant thereto John Franklin Stevenson, Emma Gunning and Margaret Stevenson, and other parties who were tenants in possession of said lands, in which bill said facts occurring prior to the probating of the will were alleged. An amended bill was also filed, in which said Berry, as executor, was made a party defendant. By consent of all the parties to the bill commissioners were appointed, and the dower and homestead of the widow in said lands were set off to her, with the stipulation that the proceedings for dower and homestead were in no way to prejudice the rights or claims of any of the parties to the suit. On May 2, 1917, the death of Thomas M. Stevenson was suggested on the record and an amended and supplemental bill was filed, in which his widow and daughter, and his grand-daughter, by her guardian, and his administrator, were substituted in his stead as complainants. Said amended and supplemental bill alleged all of the foregoing facts, and also alleged that the testator died intestate as to said lands, and set out the interests of all the parties to the bill in the lands and prayed for partition thereof and for solicitor's fees in the suit. A copy of the testator's will was attached to and filed with the amended and supplemental bill as a part thereof. The will does not

contain any devise of lands described as situated in township 6, north, range 7, west of the fourth principal meridian.

Emma Gunning and her husband, James Gunning, filed an answer, admitting the facts alleged in the amended and supplemental bill but denying that complainants were entitled to attorney's fees. Margaret Stevenson, John F. Stevenson and his wife, Ida Stevenson, and M. P. Berry, as executor, also filed answers to the bill, denying that the testator died intestate as to said lands and denying that the complainants are entitled to partition or to any relief therein prayed. They practically admitted all the other facts alleged in the bill. They also alleged that all of said lands were disposed of by the testator in his will, and that certain of the lands therein described passed by various devises in his will to his widow and children, and that certain other parts of said lands were devised to said executor, to be held in trust as declared in the will. Replications were filed to said answers and the other defendants made default.

John F. Stevenson, Ida Stevenson and M. P. Berry, as executor, filed an amended and supplemental cross-bill to construe the will of said testator, in which they set up the facts admitted by them in their answer to the amended and supplemental bill. They also charged in their cross-bill that in and by his will the testator, in the clauses thereof numbered 2, 3, 4, 5, 6 and 7, intended to devise and to dispose of all of the lands described in said amended and supplemental bill, but that in the several clauses of his will the lands were described as lying and being in "township 7 north of the base line, and range 6, west of the fourth principal meridian," which words of description are false; that the descriptions of the quarter sections and sections in every one of said devises and dispositions correctly describe the lands intended to be devised and disposed and are correct descriptions in that regard of the lands sought to be partitioned; that the court should, upon a hearing, find and declare that said words of description as to township and

range are false and should be rejected as surplusage; that said will should be construed in the light of the circumstances which surrounded the testator at the time he executed the will, and that it should be found and declared by the court that the testator, in and by said several clauses, intended to, and did thereby, devise and dispose of the lands described in the amended and supplemental bill as located in township 6 north of the base line, and in range 7, west of the fourth principal meridian, in said county and State, and that the executor should be authorized to take charge of certain parts of said lands for the purpose of discharging the trusts declared in said will. It is further alleged in the cross-bill that the testator did not own, at the time of making his will or at the time of his death, any lands whatever in township 7, north, range 6, west of the fourth principal meridian; that at the time of the making of said will and at his death the testator also owned, in addition to the lands described in the amended and supplemental bill, the east half of the northeast quarter of the southeast quarter of section 18, town 7, north, range 7, west, in said county and State, and that at said times he did not own any other real estate in section 18; that by the eleventh clause of the testator's will he intended to make distribution of said last tract and to have the same sold by his executor and the proceeds of sale distributed by him among the testator's legal heirs in the same manner as though he had died intestate; that the executor is desirous of carrying into effect said clause of the will but that doubt has arisen as to the descriptions found in the will, and that such doubt and uncertainty should be removed by an order of the court correctly construing said clause, and that the court should declare that the testator intended by said eleventh clause of the will to describe the lands in section 18. A copy of the will is attached to and made a part of the cross-bill, which copy is the same in every particular as the copy of the will attached to the amended and supplemental bill. The cross-

bill makes all the other parties interested in said lands and in said will parties defendant, and prays for a construction of the will, etc., and for reasonable solicitor's fees for services of cross-complainants' solicitor, to be taxed as costs.

All of the complainants in the amended supplemental bill, and Emma Gunning and James Gunning, filed a joint answer to the cross-bill, neither admitting nor denying that the testator did not own the lands described in clauses 2, 3, 4, 5, 6 and 7 of said will, and denying that the said clauses contained any ambiguous descriptions or other descriptions that may be corrected, construed or decreed by the court as devising or disposing of any of the testator's lands described in the amended supplemental bill. They also plead the Statute of Wills and the Statute of Frauds as a bar to the relief sought in the cross-bill. They admitted that by the eleventh clause of said will there is described "21¾ acres as timber land on section 18, township 7, north, range 7, west," and that land in said section was to be disposed of according to the provisions of the will in the manner set forth by the cross-bill; that the testator was seized and possessed of the east half of the northeast quarter of the southeast quarter of section 18, and that the same was all the land that he owned in said section. They averred that they are not advised as to whether testator intended by the eleventh clause of said will to describe the land owned by him in section 18, and that they neither admit nor deny the allegations of the cross-bill with reference thereto, but they do admit that the clause in the will is uncertain, ambiguous and not full and complete and that doubt has arisen with reference to it.

Replications were filed to the answer. The cause was referred to a special master to hear evidence and to report the same with his conclusions. On the hearing the court granted the prayer of the cross-bill, and entered a decree construing the will as prayed therein and dismissed the amended and supplemental bill for want of equity. All of the de-

fendants answering the cross-bill prayed and have perfected their appeal to this court, and Apollos W. O'Harra, appointed as guardian *ad litem* and who defended for her in the lower court, represents the minor, Catherine A. Head, in this appeal.

It is argued by appellees that the competent evidence in the record proves that the testator did not, at the time he executed his will or at his death, own the lands described in clauses 2, 3, 4, 5, 6 and 7 thereof, or any part of said lands, or any land whatever in township 7, north, range 6, west of the fourth principal meridian, in said county, and that he owned only at those times the east half of the northeast quarter of the southeast quarter of section 18, town 7, north, range 7, east of the fourth principal meridian, and the 440 acres of land described in the amended and supplemental bill as intestate property. It may be conceded that those facts are true and that the testator actually intended, at the time of making his will, to dispose of all of his land by his will, nevertheless it appears very clearly from the evidence and from the will itself that he did not so dispose of his land and the will cannot legally be so construed. The devises made by the testator in every one of the six clauses of the will that are in question are of lands situated in township 7, north, range 6, west of the fourth principal meridian, and by clear, perfect and unambiguous descriptions. The will contains no residuary clause disposing of real estate, contains no other reference to or descriptions of the lands aforesaid than appear in said clauses, and there are no general statements or other words in the will that show, or have any tendency to show, that the testator intended to dispose of all of his real estate or to dispose of only his real estate by his will. The number of acres owned by the deceased or the number of acres devised by the testator to the devisees in the several clauses is not given in the will. As the devises in the several clauses in question are of different descriptions of land

but of the same character of descriptions of real estate, we here quote one of the clauses to more clearly show their nature, to-wit:

"*Fifth*—I give, devise and bequeath unto my son, Frank Stevenson, the southeast quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$) of section five (5); also the south half ($\frac{1}{2}$) of the east half ($\frac{1}{2}$) of the southeast quarter ($\frac{1}{4}$) of section eight (8); also the north half ($\frac{1}{2}$) of the east one-third ($\frac{1}{3}$) of the northeast quarter ($\frac{1}{4}$) of said section eight (8); also the middle one-third ($\frac{1}{3}$) of the northeast quarter ($\frac{1}{4}$) of said section eight (8), all in township seven (7) north of the base line, and range six (6), west of the fourth principal meridian, situated in the county of Hancock, in the State of Illinois."

The other five clauses in question contain exactly the same character of errors as the fifth clause in the descriptions of the lands. The oral evidence and the will simply show that the testator devised by the said several clauses land owned by other parties at and since the making of the will and by perfect, unambiguous government descriptions, and the oral evidence also shows the names of those owners. In the face of these facts it is further argued that the testator devised the lands owned by him in said township 6, north, range 7, west of the fourth principal meridian, and that this court is authorized to write or to consider as written in the will, as an actual fact, that the testator intended to devise the lands owned by him at the time he made the will, because it is a presumption of the law that a testator intends to devise and bequeath property owned by him and that he did not intend to die intestate as to any property owned by him. Our Statute of Wills requires every last will and testament to be in writing, signed by the testator and duly witnessed. This court is firmly committed to the doctrine that extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed by the will itself, and that no words what-

ever can be added to or taken from a will that will have the effect of changing the plain meaning of the testator as expressed in the will. *Kurtz* v. *Hibner,* 55 Ill. 514; *Starkweather* v. *American Bible Society,* 72 id. 50; *Bishop* v. *Morgan,* 82 id. 351; *Bingel* v. *Volz,* 142 id. 214; *Williams* v. *Williams,* 189 id. 500; *Vestal* v. *Garrett,* 197 id. 398; *Graves* v. *Rose,* 246 id. 76; *Clancy* v. *Clancy,* 250 id. 297; *Alford* v. *Bennett,* 279 id. 375.

It is never permissible to strike from a will false words of a description of real estate and to put or read into a will the words "my property" or "my real estate" or their equivalent, or the words, "I have by this will devised all my property," or their equivalent, when not authorized to do so by the very language of the testator expressed in the will. All of the authorities are to the effect that no words can be added to or taken from the will that have the effect to vary the intent expressed by the will itself, where the doctrine prevails that wills cannot be corrected or reformed because of a mistake in the will. How, then, can we say in this case that the testator devised, or intended by his will to devise, his own lands and all of his lands, when the oral evidence and the language of the will itself show clearly and conclusively that he devised lands of others by complete, perfect and unambiguous government descriptions, and that he only devised a small tract, or less than one-twentieth, of his own land? The oral evidence does, in fact, show that when he made his will he intended to will lands owned by him, but that intent, to become effective, must appear from the language of the will itself. No such intent, but a different intent, was expressed by this will.

Page, in his work on wills, (sec. 487, p. 571,) lays down the correct rule where false descriptions in a will may be rejected and the property pass by the remaining descriptions that are correct or apt in describing the property, in this language: "It not infrequently happens that a testator devises land by a description which is correct

in some respects and erroneous in others. This most frequently happens where he attempts to describe the land devised by a reference to its location in a given county, or its lot number in a given plat, or its location in a specified section of a government survey. * * * Practically all the courts agree that if, after the false description or part of a description is discarded, there remains in the devise language sufficiently full and accurate to identify the subject of the gift with sufficient certainty the property there indicated will pass. If, on the other hand, when the false description is eliminated from the will there is not enough left to afford a basis for identifying the subject of the gift nothing can pass. * * * If the will describes the property by reference to the person from whom the testator acquired it, or by its location with reference to well known objects, or by reference to the name which popularly attaches to the property, the fact that a further description contains an erroneous lot number or a reference to a wrong part of a government survey does not avoid the valid and accurate description already given. So where a testator showed in his will a clear intention of disposing of the whole of his real estate, as where he devises 'my real estate' or 'all my lands,' the addition of a further and more particularly erroneous description does not avoid the effect of the general description."

It will thus appear by the last sentence above quoted that it is only where the testator shows by the language of the will itself that the testator intends to dispose of his real estate or all of his real estate by the use therein of such words as "my real estate" or "all my land" or their equivalent, that a court is authorized to read, as part of the description of his land, such words or their equivalent. After making the elimination from the description of the first tract devised to his son, Frank Stevenson, what appellees call words of false description, the description of that tract will read thus: "The southeast quarter ($\frac{1}{4}$) of

the southwest quarter ($\frac{1}{4}$) of section five (5), in township .. north, range .., west of the fourth principal meridian, in Hancock county, Illinois." No surveyor or anyone else could locate the tract of land by that description. The description of the same tract in the will does name and locate precisely, by perfect description, a tract of land, but it is not owned by the testator. Therefore, under the rule the devise cannot pass. Were we permitted to use as part of the description the words "my real estate" or their equivalent, of course the land could be definitely located and would pass to the devisee by the will. As the will does not anywhere in it contain words that definitely show that the testator intended to devise his land and only his land, we cannot read into the description such words. The legal presumption that a testator intended to devise his property and all of his property can no longer be indulged when the oral testimony and the will itself show clearly that he devised property of others that he had no interest in and did not devise a large part of his real estate that he did own and died seized of in fee, when there is no expression to be found anywhere in the will that expresses the idea that he intended to will his own property and all of his property.

This court has frequently followed the foregoing rules of interpretation quoted from Page on wills in the construction of wills but has not at all times been very explicit in giving the reasons for the interpretation. In *Decker* v. *Decker,* 121 Ill. 341, this court held that the testator intended by the first paragraph of his will to devise real estate that he owned at the time of the making of the will because the devise was prefaced by the words, "I give, devise and bequeath to my son, Oliver Decker, a part of my real estate, to-wit," which words were followed by the description of the land devised, which could be identified and located if the false words were taken out of the description and the remaining words of the description

were read in connection with the words "my real estate." In that case a number of other cases are cited in which words were made use of in the wills mentioned that not only identified the property and made it easily located after discarding false words of description, but also were in harmony with the presumption that the testator intended to will his own property.

In *Douglas* v. *Bolinger,* 228 Ill. 23, this court sustained the decision of the lower court in a case similar in character to the *Decker case, supra,* and held that the testator therein named intended to devise his property by the erroneous description there given, and rejected the false part of the description, which was determined by the oral evidence, and supplemented the rest of the description by the words "my real estate" or their equivalent, and by that description the property was readily identified.    This was proper, because it is stated in the first part of the opinion that the express recitals of the will were that the testator intended thereby to dispose of all of the property of which he died possessed.

Under the same process of reasoning this court held in *Lawrence* v. *Lawrence,* 255 Ill. 365, that in construing the will the presumption that the testator intended to devise his property should be indulged as a rule of construction, as the will itself not only did not rebut the presumption by the language used in it, but language was used in connection with the description that showed clearly that he intended to devise his own land.   This was shown by the fact that the erroneously described land was described as a part of the "home farm," and by the further fact that the descriptions of further tracts willed and described as a part of the home farm were clear, perfect and unambiguous descriptions of a part of the testator's own home farm.

In *Daniel* v. *Crusenbury,* 279 Ill. 367, the court was clearly warranted by the will itself in holding that the testator intended by the second clause of his will to devise his

285 — 32

own lands, by reason of the language found just preceding it in the first clause, to-wit: "First, I give and bequeath to my wife, Mary J. Hougham, the use of all my property, both personal and real estate, so long as she shall remain my widow, and at her death or marriage to be divided as follows."

In the following cases this court absolutely refused to follow the rule contended for by appellees, that we are authorized to write into the description the words "my real estate," or their equivalent: *Graves* v. *Rose, supra; Clancy* v. *Clancy, supra.* Had this court permitted the reading into the will of such words, the real estate in each instance would have been clearly identified and would have passed by the devises, but this court held positively that nothing can be added to the descriptions of the property that is not warranted by the express provisions of the will. It is also laid down in those cases as the correct rule, that when part of the description of real estate is false in part and true in part the false part may be rejected, and that then the devise will be held valid if enough remains to identify the subject of the devise and invalid if enough does not remain to identify the property devised. It is also held in *Graves* v. *Rose, supra,* that the subject of a devise may be identified by extrinsic proof in certain cases where it is described by quantity, and particularly if the quantity is an unusual quantity, as 13 acres or 52½ acres. The following cases fall under that rule: *Huffman* v. *Young,* 170 Ill. 290; *Alford* v. *Bennett, supra.* Courts in other jurisdictions have made similar decisions and have strictly held fast to the rule that no words or presumptions can be written into the will to aid or explain what description is intended, unless the very terms of the will itself are in harmony with the presumption or such words or their equivalent in meaning are expressed by the will itself. *Stewart* v. *Stewart,* 96 Iowa, 620; *Patch* v. *White,* 117 U. S. 210; *Priest* v. *Lackey,* 140 Ind. 399; *Pocock* v. *Redinger,* 108

id. 573; *Judy* v. *Gilbert,* 77 id. 96; *McGovern* v. *McGovern,* 75 Minn. 314; *Merrick* v. *Merrick,* 37 Ohio St. 126; *Riggs* v. *Myers,* 20 Mo. 239; *Winkley* v. *Kaime,* 32 N. H. 268.

The evidence in this case simply discloses that either the testator or the scrivener, or both, by a mistake improperly described the property intended by him to be devised to his children in said clauses, and the relief asked by appellees and decreed to them simply amounts to a reformation of the will to correct the mistakes therein made. The remaining parts of the descriptions of the lands devised, in every instance, after rejecting the alleged false words in the description, are not sufficient, in themselves, to identify any lands of the testator or any other lands. Such rejection and construction simply changed clear, unambiguous and perfect descriptions of real estate into vague, indefinite and imperfect descriptions that cannot be identified or located without inserting other words of description, which neither the will nor the law authorizes. The facts are that he devised lands owned by other parties and not owned by himself, and we cannot construe the will otherwise without construing it against the actual intent of the testator, plainly and unequivocally expressed in the will. The presumption that a testator intends to dispose of all of his property by his will and that he does not intend to die intestate as to any of his property is indulged by courts in the construction of wills, but it is never indulged to the extent of defeating the will or of construing it against the clear and manifest intent of the testator as therein expressed when all the will is considered.

The court properly construed the eleventh clause of the will, and rightly held that the property named passed to the executor for the purpose of the trust therein mentioned. The words in the will by which the testator described and identified his lands mentioned are the following: "I own twenty-one and three-fourths (21¾) acres of timber land on section eighteen (18), in township seven (7) north of

the base line, and range seven (7), west of the fourth principal meridian, situated in the county of Hancock, in the State of Illinois." The evidence clearly showed that he only owned one tract of land in said section, and that was timber land, and that the correct description thereof is as set out in the cross-bill, which is virtually admitted by the answer of appellants. The extrinsic evidence and the will made it clear the testator intended to dispose of the tract described in the cross-bill by that devise, and the court was authorized, under the rule of construction, to reject the false words "twenty-one and three-fourths (21¾) acres," as the remaining part of the description was sufficient to identify the land when aided by extrinsic evidence. This holding is in harmony with the presumption that by that clause he was intending to dispose of his land, and the court was warranted, under the evidence and by the will, to read this description as "my timber land in section 18," etc.

Appellees have assigned cross-errors on the ground that the circuit court did not allow solicitor's fees for the costs of complainants' solicitor for having the will properly construed by the court. There is no proper evidence in the record upon which to base such an allowance, and it was not error in the court to decline to tax such fees as part of the costs in the case. The cross-complainants' solicitor was not entitled to any fees for services that merely amounted to a resistance of appellants' right to have said lands partitioned. The provisions of the will are so plain and unambiguous, except as to clause 11, that there can be no question as to their meaning, and solicitor's fees were properly denied for services in an attempt to have such provisions construed against their plain and evident meaning. (*Haight* v. *Royce,* 274 Ill. 162.) If the executor in this case was entitled to have any fees at all taxed for having the will construed it was only as to said clause 11. The evidence in the record is not confined to the work of the attorney in having that clause construed. There is no proof in the record that the

executor had any contract with the attorney, and if so, what that contract was. The two witnesses who testified as to attorney's fees fixed the fees at $2000, and from their testimony we cannot determine what are proper fees, as they seem to have valued the services of said solicitor for his entire work done in the case, not only in defending against the relief sought in the original bill, but also as to the whole of his work in prosecuting the cross-bill. Such fees can in no instance exceed the price fixed by the executor and the solicitor in having the will construed, and it must be confined to such services, alone.

For the reasons above given the decree of the circuit court is affirmed as to the part thereof which construed clause 11 of the will and as to the disposition of the tract of land therein mentioned, and the remainder of the decree is reversed and the cause is remanded for a new trial.

*Reversed in part and remanded.*

DUNN, CARTER and COOKE, JJ., dissenting:

The will in this case is a carefully prepared document consisting of sixteen paragraphs, by which the testator undertakes to dispose of all his property. This property comprised, besides the 440 acres of land in sections 5, 8, 9, 16 and 28 and the tract in section 18, four shares of stock in the First National Bank of Nauvoo, eight shares of stock in the Elevator Company of Adrian, and other personal property, including corn and other grain, notes and accounts. His heirs were his three sons and two daughters, four grandchildren the children of a deceased daughter, and three grandchildren the children of another deceased daughter. The grandchildren were provided for by legacies of various sums from $200 to $800, amounting in all to $3500, which were given to them by the eighth and ninth paragraphs of the will, and by a *pro rata* distribution with the other heirs of other personal property and the rents and proceeds to be derived from the sales of certain por-

tions of the land by the executor, some to be sold immediately and others after the expiration of life estates. After providing for the payment of his debts and funeral expenses and the payment of $500 to his wife, the testator devised to her a life estate in 80 acres of land and the income from the bank stock for life. He then devised 160 acres to his son Frank, 40 acres of which was subject to the widow's life estate. To each of his other sons he devised 60 acres and to each of his daughters 40 acres. The remaining 80 acres of the 440 acres, 40 acres of which was subject to the widow's life estate, together with the tract in section 18, he devised to his executor to be rented and sold according to certain conditions which he fixed, and directed the proceeds to be divided among his legal heirs as if he had died intestate. The devises to the sons Frank and Ralph were in fee, but those to Thomas and the two daughters were for life, only, and the executor was directed, after the expiration of the life estates, to sell the land devised, and, after some intermediate direction in regard to the proceeds, eventually to distribute them among the testator's legal heirs in the same manner as though he had died intestate. The bank stock, after the death of the widow, was bequeathed to the testator's son Frank; the elevator company stock to the testator's grand-daughter Florence, the daughter of his son Thomas; the sum of $1000 was bequeathed to a sanitarium; the corn and other grain were directed to be sold, and the proceeds, together with all other property that might come into the hands of the executor, distributed among the testator's heirs in the same manner as if he had died intestate. Nothing was overlooked, and the testator undoubtedly supposed that he had carefully disposed of every part of his considerable estate, but the opinion of the court holds that as to all his land except an inconsiderable part he died intestate because in describing the land he located it in the wrong township and range, and this unfortunate conclusion is reached by excluding from

the judgment all consideration of the actual condition of
the testator's property.

The only purpose of the construction of a will is to de-
termine the intention of the testator. That intention must
be found in the words of the will itself as applied to the
subjects and objects of the testator's bounty. Parol evi-
dence, though not admissible to change the language of the
will, may be received when necessary to identify such sub-
jects and objects. A court of equity cannot correct a mis-
take by reforming the instrument, but all the circumstances
surrounding the testator and the state and description of
his property may be shown for the purpose of applying the
language to the conditions existing. However many errors
there may be in a description, either of a devisee or the sub-
ject of a devise, the devise will not be avoided if enough
remains after rejecting the errors to show with certainty
what was intended when considered from the position of
the testator. It is a presumption of law that a testator in-
tends to dispose of his own property. (*Decker* v. *Decker,*
121 Ill. 341; *Felkel* v. *O'Brien,* 231 id. 329; *Gano* v. *Gano,*
239 id. 539; *Alford* v. *Bennett,* 279 id. 375.) Further, he
is presumed to have intended to dispose of his whole estate
and not to die intestate as to any part of it. (*Higgins* v.
*Dwen,* 100 Ill. 554; *Hayward* v. *Loper,* 147 id. 41; *King*
v. *King,* 168 id. 273.) So strong is this presumption, it
was said in *Hawkins* v. *Bohling,* 168 Ill. 214, that "it has
sometimes been said, with some extravagance, perhaps, that
it will justify almost any construction of a will which will
defeat intestacy as to a part of the estate." (*Northern Trust
Co.* v. *Wheaton,* 249 Ill. 606.) These fundamental propo-
sitions are thoroughly established in the law and no ques-
tion of them is made in the opinion of the court. They
have repeatedly been applied and their existence reiterated
in a great many cases, not only in this State but in many
other jurisdictions, and are taken for granted in all cases
of construction of wills.

The will purports to dispose of the exact number of acres which the testator owned in five different sections, and the land is accurately described according to the government's subdivisions of those sections. If his will does not devise the land he owned in township 6 of range 7 then it devised only the 20 acres of timber land, and the testator, while apparently disposing by his will of a large amount of land, really died intestate as to more than 49/50ths in value of his real estate. No doubt whatever can exist as to the testator's intent. The only question is whether such intent is expressed in the will after the rejection of the false part of the description. The will refers to certain definite tracts of land which are specifically described by their government descriptions. There is no ambiguity patent on the face of the will, but upon inquiry it is found that the descriptive words of the will are in part false; that the land appearing to be devised did not belong to the testator. A latent ambiguity is thus disclosed, which it is competent to remove by evidence of the condition of the testator's property and the circumstances existing when he made his will and by an interpretation of the will in the light of such evidence. (*Decker* v. *Decker, supra.*) In that case the court cites the case of *Patch* v. *White,* 117 U. S. 210, in which the Supreme Court of the United States announces as a settled doctrine that a latent ambiguity "may arise upon a will either when it names a person as the object of the gift or a thing as the subject of it and there are two persons or things that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject, as, where there is no such person or thing in existence, or if in existence the person is not the one intended or the thing does not belong to the testator."

There is some real and much apparent conflict in the cases, both in Illinois and elsewhere, in regard to the admission of extrinsic evidence in the construction of wills, but the preponderance of the later decisions is in favor of

its admission where the testator does not own the property which the will attempts to devise, not for the purpose of adding to the language of the will but for the purpose of ascertaining the meaning of the words used by placing the court in the position of the testator and construing the words of his will with reference to the facts and all the circumstances.  In Page on Wills (sec. 819, p. 376,) it is said: "Where a testator describes the property devised by township, range, section and quarter section but does not locate it in the correct section or range, the weight of authority is that extrinsic evidence is admissible to show exactly what real estate the testator owned.  Under this view, if he owns any real estate which corresponds, in part, to the description in the will, the court will reject the incorrect part of the description and will pass the realty conveyed by the correct description."  We have quoted or cited and approved this section in several cases and have applied the principle announced in many.  The same principle has been applied in many decisions of the courts of other jurisdictions, among which are *Pate.* v. *Bushong,* 161 Ind. 533; *Merrick* v. *Merrick,* 37 Ohio St. 126; *Eckford* v. *Eckford,* 91 Iowa, 54; *Stewart* v. *Stewart,* 96 id. 620; *Moreland* v. *Brady,* 8 Ore. 303; *Riggs* v. *Myers,* 20 Mo. 239; *Winkley* v. *Kaime,* 32 N. H. 268; *Allen* v. *Lyons,* 2 Wash. C. C. 475.

In *Decker* v. *Decker, supra,* the devise was in the perfectly plain and unambiguous words, "20 acres off the west half of the northeast quarter of the northeast quarter of section 33, all in township 18, north, range 11, west of the third principal meridian."  A latent ambiguity arose only from the fact that the testator did not own this land.  It was shown that he did own the northwest quarter of the northeast quarter of the section, and the court, rejecting the words "of the northeast quarter" where they first occur in the description in the will, gave effect to the testator's intention to devise the 20 acres he actually owned in the

northeast quarter of the section. The same rule was applied in *Douglas* v. *Bolinger*, 228 Ill. 23, where the devise was of the "north half of the northwest quarter of section twelve (12)." The testator owned the west half of the quarter but not the east half of the north half. The court recognized that there was a latent ambiguity in the will from the fact that the testator did not own all the property devised, and, reading the description in the light of the circumstances shown, rejected the word "north" (the false part of the description) and held that the remaining part of the description, "the half of the northwest quarter of section 12," was sufficient to identify the land actually owned by the testator and that such land passed by the devise. In *Felkel* v. *O'Brien, supra,* under precisely similar conditions, the word "north," in a devise of the "north half of the southeast quarter of section 27," was disregarded because the testator did not own the west half of the north half of the southeast quarter, and the devise was held to pass the half of the southeast quarter of section 27 which the testator did own, which was the east half. *Collins* v. *Capps,* 235 Ill. 560, and *Gano* v. *Gano, supra,* are cases of the construction of wills of exactly the same character decided the same way.

In *Huffman* v. *Young,* 170 Ill. 290, the devise was of "62½ acres off the east side of the northeast quarter of section 20." The testator owned only 62½ acres in that quarter section which lay in the north end of the quarter, and, applying the presumption that the testator intended to devise his own property, the words "off the east side" were rejected and the devise held to pass the 62½ acres which the testator owned.

In *Alford* v. *Bennett, supra,* the testator devised to his daughter "the north 25 acres of the northeast quarter of section 17,"—a perfectly accurate description. He did not own this land but did own the northwest quarter of the section as well as the east half of the southwest quarter,

the west half of the southeast quarter and the northeast quarter of the southeast quarter of the section and other real estate in Illinois. In the preceding paragraphs of his will he had devised all of his real estate except the north 25 acres of the northeast quarter of the northwest quarter of section 17. The court applied the presumption that the testator intended to dispose of all of his property and not to die intestate as to any part of it. He did not own the north 25 acres of the northeast quarter and he did own the whole of the northwest quarter of the section, and as to the north 25 acres of the northeast quarter of the northwest quarter he had died intestate unless it was devised by the description "the north 25 acres of the northeast quarter." The court rejected the false description and construed the devise as if it read, "to my daughter, Mira A. Alford, 25 acres of section 17." He had already devised all the land he owned in section 17 except the north 25 acres of the northwest quarter of the section, and it was therefore held that this latter tract was intended by the testator and that it passed by the devise. The opinion in that case cites many other cases as well as those cited or referred to in this opinion, including that of *Patch* v. *White, supra,* which is quoted from and approved, as it was also in *Whitcomb* v. *Rodman,* 156 Ill. 116.

In *Daniel* v. *Crusenbury,* 279 Ill. 367, the descriptions of the land devised were technically accurate descriptions of land by government subdivisions, section, township and range, but they described land which the testator did not own. Rejecting the false parts of the description the court found valid devises of the land which the testator did own.

In *Graves* v. *Rose,* 246 Ill. 76, it is said on page 80 that the testator devised certain parts of sections 9 and 12, without township, county, range or State; that the chancellor permitted these matters of description to be supplied by extrinsic evidence and that there was no error in so doing. It must therefore be conceded that an ambiguity arising

from the descriptions of the subjects of the devises by section numbers, alone, without indicating the township, range, county or State, may be explained by extrinsic evidence, and that it is explained by evidence that the testator owned the land in question and no other. This conclusion is reached by the application of the presumption that the testator intended by his will to dispose of his own property and that he did not attempt to dispose of property which he did not own, and by reason of such presumption there is inherent in the description of the property the idea of ownership by the testator. Since the land described in the bill and cross-bill in this case is the only land owned by the testator the will necessarily referred to it. The devise contained two particulars of description, viz.: ownership by the testator and location by the government survey. These two descriptions do not agree, and that fact being made to appear by extrinsic evidence, a latent ambiguity is disclosed which may be removed by extrinsic evidence. In such case there is no conflict in the authorities that if, after rejecting false words of description, sufficient remains to ascertain with certainty what was intended, it is the duty of the court to reject the false words and apply the unambiguous words descriptive of the subject matter to the property actually intended to be disposed of. The sections mentioned in the will and the subdivisions of the sections are correct. They correspond with the sections and subdivisions of sections owned by the testator. Rejecting township and range, the will devised the southeast quarter of the southwest quarter of section 5. Testator owned one such tract of land and only one. It is identified by the language of the will; so are all the other tracts. The fact the testator has not stated in his will that he is disposing of his own property is not material. It is not necessary, in order to disclose an ambiguity, that he should refer expressly to the property described as his property. The idea of ownership inheres in his act of disposing of it by will. In *Case* v. *Young,* 3

Minn. 209, the testator gave to his wife "one-third of all real estate," to his son David "the north half of the real estate," and to his son Jacob "the south half of the real estate," and no other description was found in the will. The court held that it was the intention of the testator to devise his own lands to his sons and extrinsic evidence was competent to identify them.

Here is the sole point of difference of opinion in this case: The majority opinion holds that the presumption that a testator intended to dispose of his own property ceases if the testator has accurately described property which he did not own, though by rejecting a mistaken false particular of the description it also describes his own property. In our opinion the presumption is a part of the law and constitutes a part of every testator's will to the same extent as if written in it. The will is to be construed with reference to such presumption, and unless it appears from the whole will, read in the light of such presumption and the circumstances which surrounded the testator, that he intended to devise other property than his own, the intention to dispose of his own property will not be defeated. The presumption that the testator intended to dispose of his own property by his will is not rebutted by proof of a mere error in the description of his property. To say that an accurate description in a devise, unambiguous on its face, of property which the testator did not own is conclusive evidence that he intended to devise that particular property unless he expressly stated in his will that he intended to dispose of his own property is to introduce an artificial rule, based on no reason, for the very purpose of closing the judgment to the truth and preventing it from reaching the sole object of construction,—the intention of the testator. The presumption that the testator intended to dispose of his own property, only, is based upon common experience that the instances in which a testator undertakes to dispose by will of property not his own are exceedingly

rare,—so rare, indeed, as to be practically negligible. Usually the cases in which such an attempt has apparently been made have been cases of mistake as to ownership or description or some peculiar relation or condition capable of proof which led the testator to think that he was justified in making the devise. If a sane testator ever deliberately engaged in making a will and knowingly undertook to devise the property of a stranger, in which the testator had no interest, past, present or prospective, to the objects of his affection, favor or benevolence, while leaving a large part of his own property undisposed of, the case has not been brought to our notice. It seems doubtful if a case so contrary to human experience can be found. Because testators do not undertake to devise other people's property, it is to be inferred when one has apparently done so and left his own property undisposed of that he has fallen into a mistake of description, and the ambiguity caused by the error may be removed by evidence. To refuse to admit the possibility of the ambiguity would be to close the eyes judicially to the fact apparent to everyone but the court, to deliberately refuse to draw the only inference which reason and logic can draw from the fact, and thereby to refuse to declare the plain intent of the testator as shown by his will while at the same time declaring his intent to be the sole object of construction. When a testator undertakes the task of making his will he thereby declares that he intends to dispose of his own property as plainly as if he wrote it down expressly, and it does not seem reasonable or just to undertake the construction of his will except with such presumption, and the person claiming that the fact is otherwise should assume the burden of showing it.

No speaker ever utters or writer sets down all the words which must be understood by the hearer or reader to get the full meaning, and yet it cannot be said that the speaker or writer has for this reason failed to express the full meaning. When the testator, at the beginning of his will,

stated, "I, John Stevenson, * * * do make, publish and declare this to be my last will and testament," he thereby declared as fully his intention to dispose of his property as if ,he had added the words, "hereby disposing of my property as follows." The two forms of expression mean exactly the same thing. The language has no different meaning. In *Pate* v. *Bushong, supra,* it is said: "There are some cases which seem to hold that when the evidence of the circumstances, situation, surroundings and property owned by the testator at the time he made his will show that the testator did not own the land as described in his will but owned other land to which a part of the description might properly apply, no latent ambiguity was disclosed unless the words 'my land,' or other words stating, in effect, that the testator owned the land devised, are contained in the will. The rule established by the weight of the authorities, and the better reason, however, is that such evidence does disclose a latent ambiguity, whether words stating, in effect, that the testator owned the lands devised are used or not; and if, by rejecting the false description or the false part thereof, sufficient remains, when considered from the position of the testator, to identify the land intended with reasonable certainty, the same will pass, under the will, to the devisee. It is true that after rejecting the false description or the false part thereof, the words 'my real estate,' or words of like import, if used by the testator in making the devise, would be of great force in identifying the land intended, and might, alone or in connection with the true part of the description, if any, pass the land to the devisee in cases where, if the words were not used, the devise would fail for want of a description sufficient to identify the land. The enforcement of this rule does not reform or add any words to a will,—for this can not be done,—but enables the court to construe the will after rejecting the false part of the description and thus carry into effect the will of the testator as expressed there-

in." In *Collins* v. *Capps, supra,* it is said: "It is sought to distinguish this case from the *Decker case* on the ground that the will there stated the testator's intention to devise 'a part of my real estate,' while here there are no words of ownership or possession. The distinction is immaterial. The presumption is that the testator intended to dispose of property which he owned." In *Whitcomb* v. *Rodman, supra, Huffman* v. *Young, supra, Felkel* v. *O'Brien, supra,* and *Gano* v. *Gano, supra,* there were no words of ownership or possession, but those cases were decided upon the principle that a testator intended to dispose of his own property and that the misdescription was an ambiguity which could be removed by correcting the false words. The same is true of the cases of *Eckford* v. *Eckford, supra,* and *Moreland* v. *Brady, supra.*

The testator directed his executor to sell 40 acres, together with the remainder in 40 acres in which a life estate was devised to the widow and in the 140 acres devised for life to Thomas and the two daughters, and authorized his executor to make, execute and deliver to the purchasers good and sufficient deeds of conveyance and distribute the proceeds to the testator's heirs as if he had died intestate. Are not these directions evidence of an intention to devise his own property? Is it to be supposed that the testator was attempting to authorize his executor to sell and convey another's property? These expressions assume that the property devised is property which the executor could convey,—that is, property of the testator,—and of themselves constitute a claim of ownership which must be considered in the construction of the will in connection with the attempt specifically to describe the property, and which justify the rejection of the false particulars of such description.

In regard to the 60 acres devised to Ralph Stevenson by the fourth paragraph of the will, circumstances in connection with the identification of the property are found in the reference to a strip of land 10 feet wide and 160 rods

long, constituting a part of the devise, as including a hedge fence and being used as a ditch, and in the reference to the fact that Ralph is now the owner of the residue of the tract from which said 10-foot strip is taken. While the evidence is not now in the record, if it is found necessary to reverse the decree, on another hearing the court should hear any evidence which may be offered to locate the property by reference to these circumstances. In our judgment, however, the court construed the will in accordance with the intention of the testator as therein expressed, and the decree should be affirmed.